**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**GREAT FALLS DIVISION**

|  |  |
|---|---|
| JESUS VERDE HERNANDEZ,<br><br>Petitioner,<br><br>v.<br><br>ZACHARY CROSSON, Chief Patrol Agent of the Havre Section, U.S. Customs and Border Patrol; et al.,<br><br>Respondents. | **CV-26-280-GF-BMM**<br><br><br><br>**ORDER** |

Petitioner Jesus Verde Hernandez has lived in the United States for approximately 18 years, has lived in Montana for at least ten years, and has been a resident of Worden, Montana, since 2020. (Doc. 10 ¶ 1; Doc. 1 ¶ 9.) Hernandez lives with his partner of fourteen years and their three children, ages nine, six, and four years old. (Doc. 10 ¶ 2.) Hernandez's partner and children are all U.S. citizens. (*Id*.) Hernandez's three children were born in Billings, Montana. (*Id*.) Hernandez is also a stepfather to his partner's two children from a previous relationship who are young adults and U.S. citizens. (*Id*.) Hernandez is 36-years old, a devoted father, and a valuable member of the Worden community. (*Id*. ¶ 3; Doc. 1 ¶ 22.) Hernandez and his partner recently supported and took care of a homeless teen in the community for over a year. (Doc. 10 ¶ 3.) Customs and Border Patrol ("CBP") agents pulled

1

Hernandez over as he was driving in Lewistown, Montana, on July 30, 2026, and arrested him without probable cause or issuance of a warrant. (*Id*. ¶ 45-52.)

Hernandez has lived in Montana for at least ten years. (*Id*. ¶ 1.) Nothing in the record indicates that Hernandez has had any documented encounters with law enforcement during his time in the United States. (*See generally* Doc. 10.) No indications exist that Hernandez has had any documented interactions with immigration enforcement officers during his time in the United States. (*See generally* Doc. 10.) The Government confirmed that it has no evidence of any such encounters at the hearing on August 5, 2026. The Government additionally confirmed that Hernandez lacks any identified criminal record. The records of Hernandez's arrest and detainment further indicate that the Government, and specifically the CBP agents who arrested Hernandez, knew of Hernandez's lack of criminal and immigration history at the time of the arrest and detainment. (*See* Doc. 6.)

CBP agents pulled Hernandez over on the side of the road while Hernandez was driving in Lewistown, Montana, at approximately 1:45 P.M. on July 30, 2026. (Doc. 10 ¶ 45-52.) CBP agents arrested and detained Hernandez and the other man in his car without probable cause or issuance of a warrant. (*Id*. ¶ 46.) CBP agents apparently believed that either Hernandez or the other man looked like another man who was the registered owner of the car they were using. (Doc. 14 at 2-3.) This

unidentified third man had previous contact with immigration authorities. (*Id.*) CBP agents transported Hernandez and the second man to the Lewistown police station where they remained handcuffed for approximately two hours. (Doc. 10 ¶ 47.) CBP agents then drove Hernandez and the other man to Jordan, Montana, where they picked up a third detainee. (*Id.*) CBP agents transported Hernandez and the second man to the Malta Border Patrol Station to detain them overnight on July 30, 2026. (*Id.* ¶¶ 47, 48.)

Hernandez attests that CPB agents individually interrogated Hernandez, the second man, and another detainee throughout the evening on July 30, 2026. (Doc. 14 Ex. 1.) Hernandez states that CBP agents failed to inform Hernandez of his right not to answer questions, or of his right to speak with an attorney, or to ask him if he wanted to answer questions without an attorney present. (*Id.* Ex. 1 at 3-4.) Hernandez contends that the CBP agent told Hernandez he could voluntarily deport and have a chance to return to the United States in five years or risk not coming back for ten years if he wanted instead to appear in front of a judge. (*Id.* Ex. 1 at 4.)

Hernandez states that CPB agents individually pulled him from the detaining cell approximately five times to present these options. (*Id.*) Hernandez asserts that he felt "frightened and confused" and "unable to ask questions and pressured to decide immediately." (*Id.*) Hernandez contends that he verbally told a CPB agent that he would voluntarily deport as he was worried about being separated from his

3

family for ten years. (*Id*.) Hernandez never signed self-deportation papers, however, because Hernandez's counsel called the border patrol station and spoke with Hernandez. (*Id*.) CBP agents brought Hernandez into a room to speak on the phone with his counsel but a CPB agent remained in the room for Hernandez's entire conversation with his counsel. (*Id*.) Hernandez's counsel communicated that they had filed on his behalf a habeas petition seeking release. (*Id*.)

A CPB agent returned nearly an hour after Hernandez's conversation with counsel and informed Hernandez that he needed to sign papers because he had chosen to go before a judge. (*Id*.) CPB agents never informed Hernandez that he could talk to his counsel or gave Hernandez any opportunity to call his counsel before he signed the Notice of Custody Determination form apparently sometime between 1:58 A.M. and 6:29 A.M. on July 31, 2026, according to the inconsistent time stamps on the I-286 Form that Hernandez signed. (*Id*.; see Doc. 6 at 6.)

Hernandez asserts that the only other document he signed related to receipts for property. (Doc. 14 Ex. 1 at 5.) Hernandez states that he never viewed, received, or signed any documents showing a warrant for arrest, notice of a hearing before an Immigration Judge ("IJ"), or that he may be a member of a class action lawsuit. (*Id*.) The Notice to Appear describing Hernandez's IJ hearing date in Hernandez's A-file is manually dated both July 30, 2026, and July 31, 2026, on different pages, fails to include a time-stamped signature, and leaves blank the section related to certificate

of service. (Doc. 6 at 1-4.) The Warrant for Arrest in Hernandez's A-file is time-stamped at several different times between 8:40 A.M. and 8:44 A.M. on July 31, 2026. (*Id*. at 5.) The arrest record in Hernandez's A-file is time stamped from 9:05 A.M. to 9:23 A.M. on July 31, 2026. (*Id*. at 9-13.)

CBP agents transported Hernandez and the first man to the Havre Border Patrol Station on the morning of July 31, 2026, and then transported them to the Cascade County Detention Center in Great Falls, Montana in the evening on July 31, 2026. (*Id*. ¶ 49, 50.) No CPB agents obtained a judicial arrest warrant before arresting Hernandez. (*Id*. ¶ 51.)  Hernandez has received no custody redetermination hearing before an IJ since CBP took custody of him. (*See generally* Doc. 1.)

The Government argues that it properly has detained Hernandez pursuant to 8 U.S.C. § 1226(a) and Hernandez has a bond hearing scheduled before an IJ on August 13, 2026. (Doc. 13 at 2.) The Government asserts that CBP made an initial custody determination the day after it arrested Hernandez and issued a Notice of Custody Determination to Hernandez along with a Warrant for Arrest that indicated that he is detained under Section 236 of the Immigration and Nationality Act, codified at 8 U.S.C. § 1226 ("INA"). (*Id*., citing Doc. 6.) The Government contends that Hernandez has selected to have an IJ review that custody determination. (*Id*.) The Government argues that Hernandez's A-file details his arrest, detention, and removal proceedings. (*Id*., citing Doc. 6.) The Court's review of Hernandez's A-file

indicates that CPB issued a Warrant for Arrest to Hernandez that states he is being taken into custody as authorized by section 236 of the INA (aka § 1226), but the Government's Record of Deportable/Inadmissible Alien ("Form I-213") states that Hernandez is held pursuant to section 235 of the INA (aka § 1225). (Doc. 6 at 5, 13.) CBP first recorded Form I-213 on July 30, 2026. (*Id*.) The Court notes that the continuation pages are dated and time-stamped July 31, 2026. (*Id*.) CBP later issued the Warrant for Arrest for Hernandez on July 31, 2026. (*Id*. at 5, 9-13.)

The Government clarifies that it is not detaining Hernandez under the mandatory detention provisions of 8 U.S.C. § 1225(b)(2). (Doc. 13 at 4.) The Government acknowledges that the Ninth Circuit recently addressed the prolific issue of wrongful mandatory detention under 8 U.S.C. § 1225(b)(2) in *Rodriguez Vazquez v. Bostock*, No. 25-6842, 2026 WL 2196424 (9th Cir. July 30, 2026, and that the Court recently addressed this issue in *Orozco-Ramirez v. Visser*, __ F. Supp. 3d __, 2026 WL 1329806 (D. Mont. 2026) and *Torres v. Slaughter*, No. 4:26-cv-00271-BMM (D. Mont. July 7, 2026), Dkt. 10. (Doc. 13 at 2, 4-5.) The Government recognizes that the Ninth Circuit and the Court declined to adopt the Government's position and instead concluded that the petitioners in those cases were not properly subject to mandatory detention under § 1225(b). (*Id*.) The Government argues that the issues presented here differ from those in *Rodriguez Vazquez*, *Orozco-Ramirez*, and *Torres*. (*Id*.)

6

Hernandez has filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 alleging that he is in custody in the District of Montana in violation of the Constitution or laws of the United States. (Doc. 10.) Hernandez further seeks to represent a class on behalf of himself and other persons who are similarly situated that meet the following conditions: "Noncitizens who are present within the District of Montana and detained at CCDC or other detention facilities within the District who (1) have entered or will enter the United States without inspection and are or will be present in the interior of the United States, (2) were not or will not be apprehended upon arrival into the United States, and (3) are not or will not be subject to detention under 8 U.S.C. §§ 1226(c), 1225(b)(1), or 1231 at the time the Department of Homeland Security makes an initial custody determination." (*Id*. ¶ 59.) The Court addresses only Hernandez's individual claim rather than class treatment.

The Court ordered the Government to respond to Hernandez's original petition. (Doc. 3.) The Court entered an expedited scheduling order to address Hernandez's original petition. (*Id*.) The Government opposes Hernandez's petition. (Doc. 13.) The Court held a hearing on the matter on August 5, 2026. (Doc. 15.)

## LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). A habeas petitioner must prove

7

by the preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

## DISCUSSION

This case concerns the scope of the Government's authority to detain a noncitizen pending their removal proceedings pursuant to 8 U.S.C. § 1225(b)(2)(A) and 8 U.S.C. § 1226. The Ninth Circuit recently joined many other courts, including this Court, in concluding that "unadmitted aliens present in the interior of the country" are subject to discretionary detention under § 1226, rather than the mandatory detention requirements of § 1225(b)(2)(A). *See Rodriguez Vazquez*, 2026 WL 2196424, at *26; *see also Orozco-Ramirez*, 2026 WL 1329806; *Torres*, No. 4:26-cv-00271-BMM, Dkt. 10.

The Court reiterates that the INA requires people like Hernandez, Orozco, and Torres, who are unadmitted noncitizens detained in the interior of the country, to be subject to § 1226 and granted a bond hearing. *See Rodriguez Vazquez*, 2026 WL 2196424. The Government's recent practice of subjecting such people to mandatory custody pursuant to § 1225(b)(2)(A) proves unlawful. *Id*. To the extent the Government has detained Hernandez under § 1225(b)(2)(A), it conflicts with statutory mandates, and the Government should release him on appropriate

conditions based on violations of his constitutional rights. *See Torres*, No. 4:26-cv-00271-BMM, Dkt. 10, at 22-25.

The Court notes that though the Government now asserts that it has detained Hernandez pursuant to § 1226, Hernandez's A-file indicates inconsistency and suggests that CPB first may have detained Hernandez pursuant to § 1225. (*See* Doc. 6 at 13.) The Court recognizes that the Government now asserts that it detains Hernandez pursuant to § 1226 and that he has a custody redetermination hearing before an IJ scheduled for August 13, 2026. (Doc. 13 at 5-6.) The Court will address Hernandez's detainment under these circumstances and the facts of his arrest.

The Court agrees that Hernandez should be categorized under § 1226 rather than § 1225(b)(2)(A). Section 1226 "authorizes the Government to detain certain [noncitizens] *already in the country* pending the outcome of removal proceedings." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018) (emphasis added). Noncitizens detained under § 1226(a) remain entitled to receive bond hearings at the outset of detention and detention pursuant to § 1226 proves discretionary based on the flight risk and danger to the community presented. 8 C.F.R. §§ 236.1(d)(1); *see also Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1202 (9th Cir. 2022) (observing that § 1226(a) and its implementing regulations "provide extensive procedural protections that are unavailable under other detention provision").

A noncitizen may be arrested and detained under § 1226 only "on a warrant issued by the Attorney General." 8 U.S.C. § 1226(a) (citation modified). "Issuance of a warrant is a necessary condition to justify discretionary detention under section 1226(a). It follows that absent a warrant a noncitizen may not be arrested and detained under section 1226(a)." *Brice v. Gantt, et al.,* No. CIV-26-1421-D, 2026 WL 2243982, at *3 (W.D. Okla. Aug. 4, 2026) (quoting *Sergio P. v. Bondi*, No. 26-CV-1538, 2026 WL 497290, at *2 (D. Minn. Feb. 23, 2026) (citation modified)).

One exception exists to the warrant requirement under § 1226. Authorized officers may "interrogate any alien or person believed to be an alien" concerning that person's "right to be or to remain in the United States," and can arrest that person "if [the officer] has reason to believe that the [person] . . . is in the United States in violation of any . . . law or regulation [regulating the admission, exclusion, expulsion, or removal of aliens] and *is likely to escape* before a warrant can be obtained for his arrest." 8 U.S.C.A. § 1357(a)(1), (2) (emphasis added). An authorized officer's determination that an arrested person "is likely to escape" requires that the arrested person must "be taken without unnecessary delay for examination before an officer of the Service having authority to examine aliens as to their right to enter or remain in the United States." *Id.*; *see Makuiza v. Wesling*, 826 F. Supp. 3d 176, 180 (D. Me. 2026).

10

"[A] custody determination must ordinarily be made within 48 hours, accompanied by a notice to appear, and in the case of continued custody a warrant will be issued *post hoc*," when arrests properly are made without a warrant based on an authorized officers' perception of likely escape. *Makuiza*, 826 F. Supp. 3d at 180 (citing 8 C.F.R. § 287.3(d)). In other words, a proper arrest pursuant to §1226 requires either an arrest warrant that is issued before arrest, or a reasonable belief by an authorized officer upon initial investigation that a noncitizen is in the United States in violation of the law and *presents a risk of escape* if not arrested before a warrant can be obtained. No evidence in the record indicates either condition existed in this case.

The arrest warrant clearly is dated after the date of Hernandez's arrest. (Doc. 6 at 5.) The Government does not dispute that fact. The record of Hernandez's arrest, Form I-213, provides no indication of service of the arrest warrant and instead states, contrary to the arrest warrant, that CBP arrested Hernandez pursuant to § 1225. (*Id*. at 9-13.) Nothing in the arrest record (Form I-213), or anywhere in Hernandez's A-file, suggests that any CBP agent made a pre-determination that Hernandez presented an escape risk. In summary, nothing in the record indicates that the Government has met the prerequisite conditions for proper detainment under § 1226.

The Court additionally notes that Hernandez attests that CBP agents never provided him with the arrest warrant and never informed him, or provided

documents informing him, of the apparently scheduled hearing before an IJ on August 13, 2026. (Doc. 14 Ex. 1.) The Court sees that the Notice to Appear, allegedly dated and issued on July 30, 2026, includes no signature by Hernandez indicating that was personally served. (Doc. 6 at 1-4.) The entire certificate of service section has been left blank. (*Id.*) The Court observes further apparent violations of Hernandez's constitutional rights over the course of the arrest and continued detention of Hernandez. (Doc. 14 Ex. 1.)

The Government argues that § 1226 provides flexibility in timing and issuance of arrest warrants for noncitizens detained under § 1226. (Doc. 13 at 11-13.) The Government argues that the arrest warrant need not be issued before the arrest and instead only contemporaneously with the issuance of the Notice to Appear. (*Id.* at 11-12.) This interpretation conflicts with the regulations and the purpose of the heightened procedural protections and substantive rights afforded under § 1226. *See Rodriguez Vazquez*, 2026 WL 2196424, at *4; *see Heriberto Cantero Perez v. Mesa Verde Detention Center*, No. 1:26-CV-04106 (AMO), 2026 WL 2206245, at *1 (E.D. Cal. July 30, 2026) ("Accordingly, the Court finds that [the] [p]etitioner's detention, bond, and release are controlled by § 1226(a), which requires that [agents] obtain a warrant *prior* to arresting a noncitizen, and provides for the right for release on bond.") (emphasis added).

Other courts have disapproved of late-issued arrest warrants and notices to appear in this specific immigration context. *Parada Cruz v. Mullin*, No. 26-CV-1110-SJB, 2026 WL 1027441, at *3 (E.D.N.Y. Apr. 16, 2026), specifically stated that "[u]sing an after-the-fact warrant to justify a prior arrest is constitutionally problematic. It also is statutorily prohibited under the INA." *Parada Cruz* observed that the Government had issued the arrest warrant and notice to appear after the petitioner had been arrested in clear violation under previous precedent from the court in *Gopie v. Lyons*, No. 25-CV-05229-SJB, 2025 WL 3167130 (E.D.N.Y. Nov. 13, 2025). *Parada Cruz* quotes the following section from *Gopie* that proves relevant here:

> The NTA begins the removal process, and at that time or after its issuance, the Government can then effectuate his arrest, and, if necessary, detention, until removal proceedings are completed. *Niz-Chavez v. Garland*, 593 U.S. 155, 157-58 [] (2021) ("The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), 110 Stat. 3009–546, requires the government to serve 'a notice to appear' on individuals it wishes to remove from this country."). 8 C.F.R. § 1236.1 provides, in relevant part, "[a]t the time of issuance of the notice to appear, or at any time thereafter . . . the respondent may be arrested and taken into custody under the authority of Form I-200, Warrant of Arrest." 8 C.F.R. § 1236.1.
>
> ICE does not have free-ranging ability to arrest and detain people, and figure out the reasons later, like they apparently did here.

*Parada Cruz*, 2026 WL 1027441, at *3 (quoting *Gopie*, 2025 WL 3167130, at *1, 3); *see also Castañon Nava v. Dep't of Homeland Sec.*, 806 F. Supp. 3d 823, 850-53

(N.D. Ill. 2025) (rejecting proposition that DHS, and specifically ICE, may issue warrants immediately upon identifying a noncitizen unlawfully present in the United States).

*Castañon Nava* expressly rejected the argument that the Government now advances: the language of Section 236.1(b), which states that certain immigration officers have authority to issue and serve a Form I-200 arrest warrant "[a]t the time of issuance of the notice to appear, or at any time thereafter and up to the time the removal proceedings are completed," suggests that "DHS may trigger Section 1226(a) *any time and in any circumstance . . . by issuing an arrest warrant.*" 806 F. Supp. 3d at 850-53 (emphasis in original). *Castañon Nava* concludes that *Maldonado v. Bostock*, No. 2:23-CV-00760-LK-BAT, 2023 WL 5804021, at *3 (W.D. Wash. Aug. 8, 2023), determined that Section 236.1(b) does not mean what the Government suggests and the implementing regulations instead clearly limit and constrain DHS officers' ability to arrest people without prior authority. *Castañon Nava*, 806 F. Supp. 3d at 850-53. *Parada Cruz* details the many courts, and 31 distinct cases, that previously have disapproved of these after-the-fact warrants and post-arrest notices to appear. *See Parada Cruz*, 2026 WL 1027441, at *10-12.

*Castañon Nava* further notes that the alternative to an arrest warrant under § 1226, detainment upon risk of escape, "is always seriously applied" and "the flight-risk determination is not mere verbiage." 806 F. Supp. 3d at 851 (quoting *United*

14

*States v. Cantu*, 519 F.2d 494, 496-97 (7th Cir. 1975), and *United States v. Bautista-Ramos*, No. 18-CR-4066-LTS, 2018 WL 5726236, at \*8 (N.D. Iowa Oct. 15, 2018), *report and recommendation adopted*, No. 18-CR-4066-CJW, 2018 WL 5723948 (N.D. Iowa Nov. 1, 2018). *Gopie* specifically concluded that by failing to take seriously the warrant requirement or, "[b]y not making a prior or contemporaneous determination of custody, [the agents] failed to provide pre-deprivation process required in this setting." *See Gopie*, 2025 WL 3167130, at \*3 (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976)).

The Court further concludes that the *Mathews* factors demonstrate that habeas relief proves appropriate. *See Mathews*, 424 U.S. at 335. Hernandez's liberty interest proves significant, the Government's current procedures and practices create an unacceptable risk of error, and the Government's proffered interest, although "legitimate," remains outweighed by the private interest. *Id*.; *see e.g., Cortez Ledezma v. Warden, California City Immigr. Processing Ctr.*, No. 1:26-CV-04599-DC-CSK, 2026 WL 2212524, at \*5 (E.D. Cal. July 31, 2026) (discussing *Mathews* factors in current context of civil immigration detention); *see also Makuiza*, 826 F. Supp. 3d at 183; *Paula Sofia Ramirez Clavij, v. Polly Kaiser, et al.*, No. 25-CV-06248-BLF, 2026 WL 2211537, at \*5 (N.D. Cal. July 31, 2026). The Court determines that the Government failed to properly and sufficiently comply with the

15

procedural protections required under § 1226 and the implementing regulations when it detained Hernandez.

Numerous courts have determined that initial constitutional and statutory violations such as this entitle a petitioner to immediate release. The Court finds compelling these cases. For example, the Government arrested the petitioner in *Gopie*, and, like the case here, the next day served him with a Notice of Custody Determination. *Gopie*, 2025 WL 3167130, at *3. The court reasoned that due to "the absence of any deliberative process prior to, or contemporaneous with, the deprivation . . . a writ of habeas corpus is the only vehicle for relief." *Id*. (quoting *Kelly v. Almodovar*, No. 25 CIV. 6448 (AT), 2025 WL 2381591, at *3 (S.D.N.Y. Aug. 15, 2025)); *see also Valdez v. Joyce*, No. 25-CV-4627, 2025 WL 1707737, at *4 (S.D.N.Y. June 18, 2025) ("[T]he process Respondents provided prior to his re-detention was 'absolutely none.' Given the significant liberty interest at stake, the high risk of erroneous deprivation, and Respondents['] failure to show a significant interest in [the] [p]etitioner's detention, [the] [p]etitioner is entitled to more process than he received.").

The court in *Ramirez, v. Blanche, et al.,* No. 2:26-CV-1966-RFB-MDC, 2026 WL 2212520, at *1 (D. Nev. July 31, 2026), determined that the "immigration detention [of the petitioner] pursuant to a deficient Warrant for Arrest" justified immediate release. The court concluded that "[t]he government's failure to perform

16

an initial custody determination as to [the] [p]etitioner at the outset of his detention [ran] afoul of § 1226(a) and its implementing regulations." *Id*., at \*2. The court concluded that "[the] [p]etitioner's detention has been unlawful from the moment it began, and immediate release—'the typical remedy' for 'unlawful executive detention'—is appropriate here." *Id*. (quoting *Munaf v. Geren*, 553 U.S. 674, 693 (2008)).

The court in *Chacon, v. Mattos, et al.,* No. 2:26-CV-01061-RFB-EJY, 2026 WL 1960905, at \*4 (D. Nev. July 7, 2026), concluded that the "[p]etitioner's detention 'was unlawful from its inception because [the agents] detained him under the wrong statute and without affording him any notice or process whatsoever, much less the procedures due under Section 1226(a).'" (quoting *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 319-20 (E.D.N.Y. 2025)). *Perez Chacon* determined that "[i]mmediate release is thus the appropriate remedy for Federal Respondents' 'detain first, justify later' approach to [the] [p]etitioner's liberty, which mangles § 1226(a)'s regulatory framework and due process." *Perez Chacon*, 2026 WL 1960905, at \*4.

*Perez Chacon* cited *Djiwaje v. Bondi*, No. 2:26-CV-00344-RFB-MDC, 2026 WL 926753, at \*3-4 (D. Nev. Apr. 6, 2026), which concluded that "'the legal authority to arrest and detain a noncitizen under § 1226(a) derives entirely from the I-200 [administrative warrant]'s compliance with governing regulations[,]' and in

17

the absence of a showing that the warrantless arrest exception under 8 U.S.C. § 1357(a)(2) applied at the time of the noncitizen's arrest, the petitioner's seizure was unlawful such that release was the appropriate remedy." *Perez Chacon*, 2026 WL 1960905, at *4 (citation modified). *Perez Chacon* further reasoned that "[i]n the absence of a warrant and/or initial custody determination, which establish a lawful basis for detention in the first instance, a subsequent bond hearing 'is no substitute for the requirement that [the agents] engage in a deliberative process prior to, or contemporaneous with, the initial decision to strip' [the] [p]etitioner of his freedom." *Perez Chacon*, 2026 WL 1960905, at *4 (quoting *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025)) (citation modified).

*Brice, v. Gantt, et al.,* No. CIV-26-1421-D, 2026 WL 2243982, at *3 (W.D. Okla. Aug. 4, 2026), also determined that immediate release proved proper when the Government failed to provide a properly issued warrant when it detained the non-citizen petitioner. *See also Joaquin Q. L. v. Bondi*, No. 26-CV-233 (LMP/DTS), 2026 WL 161333, at *3 (D. Minn. Jan. 21, 2026) ("Since the Government did not comply with the plain language of section 1226(a), [the petitioner's] immediate release is justified.") (internal citation omitted and brackets modified); *see Cantero Perez*, 2026 WL 2206245, at *1 ("Accordingly, the [c]ourt finds that [the] [p]etitioner's detention, bond, and release are controlled by § 1226(a), which requires that [the agents] obtain a warrant prior to arresting a noncitizen, and

18

provides for the right for release on bond. As Respondents . . . [have not] presented any prima facie evidence that [the] [p]etitioner would be a flight risk or danger to the community, the appropriate remedy is [the] [p]etitioner's immediate release.").

The Court finds distinguishable the cases cited by the Government that suggest Hernandez's requested relief proves inappropriate. *See Miranda Benevidez, v. Fereti Semaia, et al.,* No. 5:26-CV-03232-SSC, 2026 WL 2178769 (C.D. Cal. July 27, 2026) (second habeas petition for a petitioner who already had individualized bond hearing before IJ and was determined to be a flight risk); *Salcido Mendez, v. Secretary of Homeland Security, et al.,* No. 5:26-CV-03145-SB-AJR, 2026 WL 2138133, at *3 (C.D. Cal. July 17, 2026) (determining that release was not proper remedy for alleged violation of rights where the petitioner failed to address arguments otherwise and did not dispute that he received the Notice to Appear); *L-J-P-L- v. Wamsley*, No. 3:25-CV-01390-IM, 2025 WL 2430268, at *2 (D. Or. Aug. 22, 2025) (a petitioner who had been removed twice already from United States and then returned and was again detained, was subject to mandatory detention under 8 U.S.C. § 1231(a)(2), and initial failure to use previous removal order did not justify release); *Kaur v. Hernandez*, No. C26-1914-MLP, 2026 WL 2123025, at *3 (W.D. Wash. July 23, 2026), *reconsideration denied*, No. C26-1914-MLP, 2026 WL 2168516 (W.D. Wash. July 28, 2026) (the petitioner's detention was lawful based on a final order of removal dating from 2018 pursuant to 8 U.S.C. § 1231 and the

19

length of detention of five and a half months had not yet exceeded the presumptively reasonable period).

The Court additionally notes that it finds unpersuasive the Government's argument that Hernandez must first exhaust administrative remedies before he properly can pursue habeas relief in district court. (Doc. 13 at 8-9.) Courts repeatedly have rejected this assertion even while recognizing that courts generally require administrative exhaustion before immigration detention may be challenged in federal court by a writ of habeas corpus. *See e.g., Lopez Benitez*, 795 F. Supp. 3d at 496; *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 778 (E.D. Mich. 2025), *aff'd*, 175 F.4th 713 (6th Cir. 2026); *G.S. v. Bostock*, No. 2:25-CV-01255-JNW-TLF, 2025 WL 3014274, at *6 (W.D. Wash. Oct. 8, 2025), *report and recommendation adopted*, No. 2:25-CV-01255-JNW-TLF, 2025 WL 3014035 (W.D. Wash. Oct. 28, 2025); *Gurrola v. Cruz*, No. 1:25-CV-02078-JLT-HBK (HC), 2026 WL 494478, at *3 (E.D. Cal. Feb. 23, 2026), *report and recommendation adopted sub nom. Herredia Gurrola v. Cruz*, No. 1:25-CV-02078 JLT HBK (HC), 2026 WL 622124 (E.D. Cal. Mar. 5, 2026); *Makuiza*, 826 F. Supp. 3d at 181 n.6.

The Court notes that 28 U.S.C. § 2241 "does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus." *Laing v. Ashcroft*, 370 F.3d 994, 997 (9th Cir. 2004) However, "[a]s a prudential matter, courts require that habeas petitioners exhaust all available judicial and administrative

remedies before seeking relief under § 2241." *Ward v. Chavez*, 678 F.3d 1042, 1045 (9th Cir. 2012). Because exhaustion is not required by statute, it is not jurisdictional. *Brown v. Rison*, 895 F.2d 533, 535 (9th Cir. 1990), *overruled on other grounds by Reno v. Koray*, 515 U.S. 50, 54-55 (1995) (citing *Morrison-Knudsen Co., Inc. v. CHG Int'l, Inc.*, 811 F.2d 1209, 1223 (9th Cir. 1987)); *see also Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). If a petitioner has not properly exhausted his claims, the district court, in its discretion, may "determine whether to excuse the faulty exhaustion and reach the merits or require the petitioner to exhaust his administrative remedies before proceeding in court." *Brown*, 895 F.2d at 535.

"Courts may require prudential exhaustion if (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (internal citation and quotation marks omitted). The Court may waive the exhaustion requirement, however, when administrative remedies prove inadequate, irreparable injury may occur without immediate judicial relief, or exhaustion otherwise would be futile. *Laing*, 370 F.3d at 1000-01 ("[D]istrict court's habeas jurisdiction under 28 U.S.C. § 2241 is ordinarily reserved for instances in which no other judicial remedy is available.");

*see Vasquez-Rodriguez v. Garland*, 7 F.4th 888, 896 (9th Cir. 2021) ("where the agency's position appears already set and recourse to administrative remedies is very likely futile, exhaustion is not required.").

The Court concludes that administrative exhaustion appears futile considering the BIA's recent holding that all noncitizens detained in the United States without admission are "seeking admission" for purposes of 8 U.S.C. § 1225(b)(2)(A) and must be detained. *See Singh v. Andrews*, 2025 WL 3523057, at *2 (E.D. Cal. Dec. 9, 2025) (citing *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025)). The Court additionally adopts the perspective employed by the court in *Gopie* in reasoning that Hernandez "is not required to exhaust a process that was deficient from the outset." 2025 WL 3167130, at *3. *Gopie* observed that the Government's cited administrative relief—in this case a hearing before an immigration judge—requires a valid custody determination be made in the first place. *Id*. *Gopie* concluded that the Government's "after-the-fact determination" proved invalid and a second chance in another setting was unwarranted. *Id*.

The Court determines that considering the Government's initial failures, along with its continued dedication to enforcing a policy deemed unlawful by the majority of courts, presents the exact situation in which judicial exhaustion may be excused as "available remedies provide no genuine opportunity for adequate relief" or exhaustion "would be futile." *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003)

(Sotomayor, J.) (as amended) (internal citation omitted). The Court agrees with *Kelly*, 2025 WL 2381591, at \*3, that the Government's assertion that administrative exhaustion could "cure" its previous deficiencies, or even provide "an adequate remedy" "rings hollow."

The Court highlights that the "substantial constitutional questions" raised here and Hernandez's assertion that he "is in custody in violation of the Constitution or laws or treaties of the United States" further permit relief from the administrative exhaustion requirement. *Beharry*, 329 F.3d at 62; *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011). The Court determines that it proves appropriate to waive administrative exhaustion requirements in this instance. The Court additionally remains unpersuaded by the Government's citation of *Marvan v. Slaughter*, 2025 WL 1940043 (D. Mont. July 15, 2025), as *Marvan* involved different factual and legal circumstances and challenges. The Court also notes that the jurisprudence in this immigration arena has significantly evolved over the past year and courts routinely reject the Government's assertion that 8 U.S.C. § 1252(b)(9), or other provisions of § 1252, bars district courts from hearing similar petitions. *See e.g., Maldonado Rojas v. Warden of the Golden State Annex*, No. 1:26-CV-04315-NW, 2026 WL 1871025, at \*3 (E.D. Cal. June 29, 2026) ("Courts throughout the country have rejected this argument where the petitioner is challenging the lawfulness of his detention.") (collecting cases); *Avila v. Warden, Golden State Annex*, No. 1:26-CV-

04274 (NW), 2026 WL 1765353, at *2 (E.D. Cal. June 18, 2026) ("[The] [p]etitioner's claim challenging his continued detention during the pendency of his removal proceedings fall squarely in th[e] category" of claims that fall beyond the scope of § 1252(b)(9)'s "built-in limits."); *Edgar Uriel Martinez-Salamanca v. Juan Baltazar, Warden, Aurora ICE Processing Ctr., in his official capacity, et al.,* No. 26-CV-02410-PAB, 2026 WL 2083209, at *2 (D. Colo. July 20, 2026) (§ 1252(b)(9) fails to bar claim because it "does not challenge the removal proceedings themselves); *Waziri v. Raycraft*, No. 1:26-CV-1135, 2026 WL 1203744, at *1 (W.D. Mich. May 4, 2026) (same, collecting cases); *Rodriguez v. Bostock*, 802 F. Supp. 3d 1297, 1314 (W.D. Wash. 2025), *aff'd sub nom. Rodriguez Vazquez v. Bostock*, No. 25-6842, 2026 WL 2196424 (9th Cir. July 30, 2026) ("And the [U.S.] Supreme Court has made clear that challenges to the interpretation of the INA's detention provisions are collateral to the removal process."); *see also Orozco-Ramirez*, 2026 WL 1329806, at *3.

"This practice of after-the-fact arrest warrants can be called many things— illegal, improper, and unconstitutional, among them. But whatever label one wishes to apply, the practice is fundamentally at odds with and offensive to lawful, constitutional behavior in this country." *Parada Cruz*, 2026 WL 1027441, at *5. The Court determines that immediate release proves appropriate, available, and proper in this case to remedy the constitutional and statutory violations committed by the

24

Government against Hernandez. The Court defers ruling on the matter of attorneys' fees and costs. Should Hernandez's counsel wish to pursue a claim for attorneys' fees and costs under the Equal Access to Justice Act (EAJA), they are instructed to file a separate motion on the issue in accordance with Local Rules.

**ORDER**

Accordingly, **IT IS ORDERED**:

- Hernandez's Petition (Doc. 10) is **GRANTED as to himself individually.**

- The Court orders the Government to release Hernandez from custody within 24 hours of this Order, under appropriate conditions of release, and to facilitate his transportation from the detention facility by notifying his counsel when and where he can be collected.

- **IT IS FURTHER ORDERED** that the Government must return Hernandez's personal property, including any personal identification and employment authorization documents, upon his release**.**

- **IT IS FURTHER ORDERED** that the Government is **PERMANENTLY ENJOINED** from detaining Hernandez pursuant to 8 U.S.C. § 1225(b)(2)(A).

- **IT IS FURTHER ORDERED** that the Government may not re-detain Petitioner pursuant to 8 U.S.C. § 1226(a) during the pendency of his

current removal proceedings until after an immigration court hearing is held, with adequate notice, to determine whether detention is appropriate under 8 U.S.C. § 1226(a) and its implementing regulations. At this hearing, the Government must bear the burden of establishing that detention is appropriate by clear and convincing evidence.

- If Petitioner becomes subject to a final order of removal and Petitioner receives notice of such order, the Government may detain Petitioner for the sole and limited purpose of executing removal pursuant to 8 U.S.C. § 1231(a)(2)(A). In such an event, Respondents **SHALL** provide a bond hearing in the timeframe required by law.

- The Court orders the Government to certify compliance with this Order by filing on the docket.

- The Court retains jurisdiction to enforce its order and judgment. Hernandez may move to reopen this case to enforce the judgment without filing a separate case.

**DATED** this 7th day of August, 2026.

Brian Morris, Chief District Judge
United States District Court