**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**GREAT FALLS DIVISION**

| | |
|---|---|
| JESUS VERDE HERNANDEZ,<br><br>Petitioner,<br><br>v.<br><br>ZACHARY CROSSON, Chief Patrol Agent of the Havre Section, U.S. Customs and Border Patrol; et al.,<br><br>Respondents. | **CV-26-280-GF-BMM**<br><br>**ORDER ON CLASS CERTIFICATION** |

Petitioner Jesus Verde Hernandez has filed a petition on behalf of himself, and others similarly situated, for writ of habeas corpus under 28 U.S.C. § 2241 alleging that Petitioners are in custody in the District of Montana in violation of the Constitution or laws of the United States. (Doc. 10.) Hernandez seeks to represent a class of noncitizens who are present within the District of Montana and detained at Cascade County Detention Center or other detention facilities within the District of Montana who: (1) have entered or will enter the United States without inspection and are or will be present in the interior of the United States; (2) were not or will not be apprehended upon arrival into the United States; and (3) are not or will not be subject to detention under 8 U.S.C. §§ 1226(c), 1225(b)(1), or 1231 of the

Immigration and Nationality Act ("INA") at the time the Department of Homeland Security makes an initial custody determination. (*Id*.)

The Court granted Hernandez's petition as himself individually. (Doc. 16.) The Court addressed only Hernandez's individual petition and reserved ruling on class treatment. (*Id*.) The Court ordered the parties to file supplemental briefing related to issues of class treatment. (Doc. 18.) The Court held a hearing on August 27, 2026. (Doc. 37.) The Court now addresses the issues of class treatment.

## LEGAL STANDARD

### I. Class Certification

The class action represents "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)). To justify a departure from that rule, "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Id*. at 348-49 (quoting *East Tex. Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)).

Rule 23 provides the procedural mechanism for federal courts to adjudicate class claims. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 663 (9th Cir. 2022). To take advantage of that procedure, the named

plaintiffs seeking to represent the class must make two showings pursuant to Rule 23(a) and Rule 23(b). *See id.*

First, Rule 23(a) is designed to protect the interests of class members by ensuring "the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Id.* at 345. Rule 23(a) requires the representative parties seeking class certification to establish "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). "The Rule's four requirements—numerosity, commonality, typicality, and adequate representation—'effectively limit the class claims to those fairly encompassed by the named plaintiff's claims.'" *Dukes*, 564 U.S. at 349 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982).

Second, the plaintiffs must show that the class fits into one of three categories. *Olean*, 31 F.4th at 663 (citing Fed. R. Civ. P. 23(b)). Plaintiffs seek to certify a class pursuant to Rule 23(b)(2) and Rule 23(b)(1)(A). Rule 23(b)(2) applies "only when a single injunction or declaratory judgment would provide relief to each member of the class." *Dukes*, 564 U.S. at 360 (citing Fed. R. Civ. P. 23(b)(2)). Rule 23(b)(1)(A) applies when separate claims by individual class members "would create a risk of .

. . inconsistent or varying adjudications[.]" *M-J-M-A v. Hermosillo*, 822 F.Supp.3d 1147, 1177 (D. Or. 2026). (quoting Fed R. Civ. P. 23(b)(1)(A)).

"Before it can certify a class, a district court must be 'satisfied, after a rigorous analysis, that the prerequisites' of both Rule 23(a) and 23(b) have been satisfied." *Olean*, 31 F.4th at 664 (quoting *Falcon*, 457 U.S. at 161). Further, "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question" because "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Falcon*, 457 U.S. at 160. "'Plaintiffs wishing to proceed through a class action must actually *prove*—not simply plead—that their proposed class satisfies each requirement of Rule 23' . . . and must carry their burden of proof 'before class certification.'" *Olean*, 31 F.4th at 664 (quoting *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275-76 (2014)) (emphasis in original). Accordingly, Plaintiffs "must prove the facts necessary to carry the burden of establishing that the prerequisites of Rule 23 are satisfied by a preponderance of the evidence." *Id*. at 665.

Finally, "at least one named plaintiff" must satisfy Article III's standing requirements. *Vazquez v. Bostock*, 349 F.R.D. 333, 349 (W.D. Washington 2025). *Bates v. United Parcel Serv.*, Inc., 511 F.3d 974, 985 (9th Cir. 2007) (citing *Armstrong v. Davis*, 275 F.3d 849, 860 (9th Cir. 2001)). The named plaintiff "bears

the burden of showing that the Article III standing requirements are met." *Id*. (citing *Armstrong*, 275 F.3d at 860-61.) Standing requires that (1) the plaintiff suffered an injury in fact—one that is sufficiently "concrete and particularized" and "actual or imminent, not conjectural or hypothetical," (2) the injury is "fairly traceable" to the challenged conduct, and (3) the injury is "likely" to be "redressed by a favorable decision." *Id*; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (cleaned up).

**DISCUSSION**

This case concerns the scope of the Government's authority to detain a noncitizen pending their removal proceedings pursuant to 8 U.S.C. § 1226 and 8 U.S.C. § 1225. The Ninth Circuit recently joined many other courts, including this Court, in concluding that "unadmitted aliens present in the interior of the country" are subject to discretionary detention under § 1226, rather than the mandatory detention requirements of § 1225(b)(2)(A). *See Rodriguez Vazquez*, 2026 WL 2196424, at *26; *see also Orozco-Ramirez*, 2026 WL 1329806; *Torres*, No. 4:26-cv-00271-BMM, Dkt. 10. The Court again reiterates that the INA requires people like De La Cruz and his daughter A-E-V, Hernandez, Orozco, and Torres, who are unadmitted noncitizens detained in the interior of the country, to be subject to § 1226 and granted a bond hearing. *See Rodriguez Vazquez*, 2026 WL 2196424. The Government's recent practice of subjecting such people to mandatory custody

pursuant to § 1225(b)(2)(A) proves unlawful. *Id*. To the extent the Government has detained any persons in this class under § 1225(b)(2)(A), the Court will address the appropriate relief in this order.

The Government clarifies that it detains no putative class members under the mandatory detention provisions of 8 U.S.C. § 1225(b)(2). (Doc. 28 at 2.) The Government claims to be detaining the putative class members under the discretionary detention provisions of 8 U.S.C. § 1226(a). (Doc. 28 at 2.) Section 1226 "authorizes the Government to detain certain [noncitizens] *already in the country* pending the outcome of removal proceedings." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018) (emphasis added). Noncitizens detained under § 1226(a) remain entitled to receive bond hearings at the outset of detention pursuant to § 1226 proves discretionary based on the perceived flight risk and danger to the community presented. 8 C.F.R. §§ 236.1(d)(1); *see also Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1202 (9th Cir. 2022) (observing that § 1226(a) and its implementing regulations "provide extensive procedural protections that are unavailable under other detention provision").

**A. The Fourth Amendment and the INA.**

The court in *M-J-M-A v. Lyons*, 2026 WL 1815866 (D. Ore. June 24, 2026), recently faced a similar habeas petition and this Court also begins with a brief background on the purpose and scope of the Fourth Amendment and its application

in the immigration context. The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Constitution amend. IV. This protection against unreasonable searches and seizures extends to both citizens and non-citizens. *United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990). *Verdug-Urquidez* states unequivocally that non-citizens "receive constitutional protections when they have come within the territory of the United States and developed substantial connections with this country." *Id.* "The Fourth Amendment applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest." *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975) (citation omitted).

A seizure involves "physical force or a show of authority that in some way restrains the liberty of the person." *Torres v. Madrid*, 592 U.S. 306, 311 (2021) (quotation marks, alteration, and citation omitted). "[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in the view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). This prohibition generally requires law enforcement officers to have a warrant or probable cause before making an arrest. *Terry v. Ohio*, 392 U.S. 1, 20 (1968).

The U.S. Supreme Court has recognized that the warrant "traditionally has represented an independent assurance that a search and arrest will not proceed

without probable cause." *Shadwick v. City of Tampa*, 407 U.S. 345, 350 (1972). In turn, this independent assurance arises from the "neutral and detached" position of the issuing judicial officer. *Id.* The involvement of this neutral and detached judicial officer supports "the whole point of the basic rule" that recognizes that "prosecutors and policemen simply cannot be asked to maintain the requisite neutrality with regard to their own investigation." *Coolidge v. New Hampshire*, 403 U.S. 443, 449 (1971).

As applied to the immigration context, courts have concluded that immigration authorities may arrest people for civil immigration removal, "consistent with the Fourth Amendment," pursuant to an administrative warrant issued by an executive official, rather than by a judicial officer. *Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 825 (9th Cir. 2020); 8 C.F.R. § 287.5(e)(2). The ICE training materials make clear, however, that these types of administrative warrants "do not authorize entry into a dwelling without consent." *Kidd v. Mayorkas*, 734 F. Supp. 3d 967, 983 (C.D. Cal. 2024). Moreover, absent an administrative or judicial warrant, "a seizure of a person must be supported by probable cause particularized to that person. *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979). An arresting officer may not undercut this probable cause particularized to the person "by simply pointing to the fact that coincidentally there exists probable cause to seize another or to search the premises where the person may happen to be." *Id.*

A noncitizen may be arrested and detained under § 1226 only "on a warrant issued by the Attorney General." 8 U.S.C. § 1226(a) (citation modified). "Issuance of a warrant is a necessary condition to justify discretionary detention under section 1226(a). It follows that absent a warrant a noncitizen may not be arrested and detained under section 1226(a)." *Brice v. Gantt, et al.,* No. CIV-26-1421-D, 2026 WL 2243982, at *3 (W.D. Okla. Aug. 4, 2026) (quoting *Sergio P. v. Bondi*, No. 26-CV-1538, 2026 WL 497290, at *2 (D. Minn. Feb. 23, 2026) (citation modified)). More importantly, probable cause must be established by "the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S.146, 152 (2004) (citation omitted). The arresting officer may not justify an arrest with facts learned after the arrest. *Id.*

An immigration officer "must have reasonable suspicion" to stop a person and question them "about their citizenship and immigration status . . . [and] any further detention . . . must be based on . . . probable cause." *Brignoni-Ponce*, 422 U.S. at 881-82, 884. To be clear, the Fourth Amendment "forbids stopping or detaining persons for questioning about their citizenship on less than reasonable suspicion." *Id.* The INA and its implementing regulations make clear that immigration officers must obtain arrest warrants before making an arrest for a suspected immigration violation. 8 C.F.R. § 287.8(c)(2)(ii).

One exception exists to the warrant requirement under § 1226. Authorized officers may "interrogate any alien or person believed to be an alien" concerning that person's "right to be or to remain in the United States," and can arrest that person "if [the officer] has reason to believe that the [person] . . . is in the United States in violation of any . . . law or regulation [regulating the admission, exclusion, expulsion, or removal of aliens] and *is likely to escape* before a warrant can be obtained for his arrest." 8 U.S.C.A. § 1357(a)(1), (2) (emphasis added). The "reason to believe" requirement comports with "the constitutional requirement of probable cause." *Tejeda-Mata v. Immigr. & Naturalization Serv.*, 626 F.2d 721, 725 (9th Cir. 1980). An authorized officer's determination that an arrested person "is likely to escape" requires that the arrested person must "be taken without unnecessary delay for examination before an officer of the Service having authority to examine aliens as to their right to enter or remain in the United States." *Id.*; *see Makuiza v. Wesling*, 826 F. Supp. 3d 176, 180 (D. Me. 2026).

"[A] custody determination must ordinarily be made within 48 hours, accompanied by a notice to appear, and in the case of continued custody a warrant will be issued *post hoc*," when arrests properly are made without a warrant based on an authorized officers' perception of likely escape. *Makuiza*, 826 F. Supp. 3d at 180 (citing 8 C.F.R. § 287.3(d)). In other words, a proper arrest pursuant to §1226 requires either an arrest warrant to be issued before arrest, or a reasonable belief by

an authorized officer upon initial investigation that a noncitizen is in the United States in violation of the law and *presents a risk of escape* if not arrested before a warrant can be obtained.

**B. Scope of Putative Class.**

The Court recently addressed the Government's unlawful detention pursuant to § 1226(a) of Hernandez, individually, and another two unnamed members of the putative class, De La Cruz and his minor daughter, A. E. V. (*See* Doc. 16); *see De La Cruz v. Crosson*, 4:26-cv-00-289-BMM (D. Mont. August 19, 2026), Dkt. 13. The Court determined that the Government's issuance of after-the-fact warrants and failure to make a prior or contemporaneous determination of custody before detaining the petitioners violated the INA. *Id*. The Court determined that habeas relief proved appropriate considering the Government's violation of the petitioners' constitutional rights and its statutory mandates. *Id*.

The Court recognizes that Petitioners' motion to certify a class presents new questions and procedural considerations. Petitioners propose the following class:

> "Noncitizens who are present within the District of Montana and detained at CCDC or other detention facilities within the District who (1) have entered or will enter the United States without inspection and are or will be present in the interior of the United States, (2) were not or will not be apprehended upon arrival into the United States, and (3) are not or will not be subject to detention under 8 U.S.C. §§ 1226(c), 1225(b)(1), or 1231 at the time the Department of Homeland Security makes an initial custody determination."

(Doc. 10.)

Other districts courts in this circuit have certified similar classes. A court in the District Court of Washington ordered the following two classes be certified on May 2, 2025:

> **Bond Denial Class**: All noncitizens without lawful status detained at the Northwest ICE Processing Center who (1) have entered or will enter the United States without inspection, (2) are not apprehended upon arrival, (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the noncitizen is scheduled for or requests a bond hearing.
>
> **Bond Appeal Class**: All detained noncitizens who have a pending appeal, or will file an appeal, of an immigration judge's bond hearing ruling to the Board of Immigration Appeals.

*Rodriguez v. Bostock*, 349 F.R.D. 333, 344 (W.D. Wash. 2025). The court certified the Bond Appeal Class only for the Due Process claim. *Id.*

The classes in *Bostock* sought only declaratory relief under Federal Rule of Civil Procedure 23(b)(2). *Id*. at 348. The court in *Rodriguez* denied an individual unnamed class member's motion for an individual temporary restraining order as the Court determined that the petitioner had failed to demonstrate that the "[c]ourt ha[d] the power to grant an injunction to an unnamed member of a class certified on the basis that a single declaratory judgment would provide its members their requested relief." *Rodriguez v. Bostock*, No. 3:25-CV-05240-TMC, 2025 WL 1655483, at *5 (W.D. Wash. May 19, 2025). The court observed that the requested relief appeared

to exceed the scope of Rule 23(b)(2). *Id.*, at *4. The *Rodriguez* court did grant a preliminary injunction, however, to an individual unnamed class member. *Id.*, at *5. The court distinguished between a preliminary injunction which allowed for full briefing compared to a temporary restraining order and determined it had the authority to grant individual preliminary injunctions for unnamed class members. *Id.*

A court in the Central District of California certified the following class on December 18, 2025:

> **Bond Eligible Class**: All noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination.

*Bautista v. Santacruz*, 813 F. Supp. 3d 1084, 1127 (C.D. Cal. 2025), *judgment entered sub nom. Maldonado Bautista v. Noem*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025). The court determined it properly could issue declaratory relief and vacatur to the class members as whole but could not order immediate release without violating § 1252(f)(1). *Id.* at 1125. The court concluded "all members of the Bond Eligible Class [were] entitled to relief in the form of declaratory relief, which declare[d] the DHS Policy unlawful, and grant[ed] vacatur under the APA, which set[] aside the DHS Policy." *Id.* at 1127.

The District of Nevada certified the following class on February 5, 2026:

> All noncitizens in the U.S. without lawful status (1) who are or will be arrested or detained by ICE; (2) who are or will be in removal proceedings before an Immigration Court within the District of Nevada; (3) whom DHS alleges or will allege to have entered the United States without inspection or parole; (4) who are not or will not be subject to detention under 8 U.S.C. §§ 1226(c), 1225(b)(1), or 1231 at the time they are scheduled for or request a bond hearing; and (5) whose most recent arrest by ICE occurred inside the United States and not while arriving in the United States.

*Ramirez v. Noem*, 823 F. Supp. 3d 1182, 1223-24 (D. Nev. 2026). The *Ramirez* class similarly sought only declaratory relief. The court noted the following distinction: "[t]he relief available through habeas is distinct from the relief [the p]laintiffs seek here—declaratory relief regarding the lawfulness of [the] [d]efendants *policies*, not relief from unlawful executive detention *per se*, and set aside of those policies under the APA." *Id*. at 1223.

Finally, the District of Oregon certified the following class and subclass on June 24, 2026:

> WARRANTLESS ARREST CLASS: All persons since September 28, 2025, who have been arrested or will be arrested in the District of Oregon for alleged immigration violations without a warrant and without pre-arrest, individualized assessment of probable cause that the person is in the United States unlawfully and that person poses a flight risk.

> UNASSESSED ESCAPE RISK SUBCLASS: All persons since September 28, 2025, who have been arrested or will be arrested in the District of Oregon for alleged immigration violations without a warrant and without pre-arrest, individualized assessment of probable cause that the person poses a flight risk.

*M-J-M-A*, 2026 WL 1815866, at *12.

The Court finds instructive these previous cases. Petitioner additionally seek immediate habeas relief on behalf of a subclass comprised of the following people:

> "All persons detained in the District of Montana, who were arrested or will be arrested on or after July 25, 2026, for alleged civil immigration violations, and for whom the detaining officer failed to obtain a warrant and did not conduct a pre-arrest, individualized assessment of probable cause that the person poses a flight risk."

(Doc. 27 at 1.)

Petitioners did not include the subclass in the First Amended Complaint. (Doc. 10.) Petitioners request the Court to first certify the proposed class and the subclass. (Doc. 10 at 36.) Petitioners request declaratory and injunctive relief. (*Id*. at 36, 37.) Petitioners further request the Court grant habeas relief to every subclass member unless Respondents affirmatively prove the arresting officers correctly followed the requirements under § 1226(a). (Doc. 27 at 3.) The Court will address in turn each issue of class certification.

## I. Standing

At the time of filing, Petitioner was unlawfully detained and sought habeas relief identical to the putative class. After filing, however, the Court granted Petitioner's writ of habeas relief, thereby rendering moot Petitioner's individual claims. (Doc. 16.) Petitioners argue that Petitioner's secured release remains irrelevant for the standing requirement. Petitioners further argue irrelevancy because

putative class member Jose Alfredo Martinez Alaniz requests to be added as a named class representative. (Doc. 27 at 8.)

A class action remains live even if the named class representative obtains relief before certification. *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 52 (1991) In any case, even where a court has yet to certify a class, “mooting the class representative[s’] claims will not necessarily moot the class action” if the putative class claims are inherently transitory. *Sequen v. Albarran*, 810 F.Supp.3d 1084, 1120 (N.D. Cal 2025.) (quoting *McLaughlin*, at 52). “Some claims are so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative’s individual interest expires.” *U.S. Parole Comm’n v. Geraghty*, 445 U.S. 388, 399 (1980); *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975).

*Sequen* ordered the named plaintiffs to be removed from the government’s short-term detention facility before the class had been certified. *Sequen*, at 1119. The government argued that the release of the named plaintiff mooted the plaintiffs’ claims. *Id*. The court agreed that the named plaintiffs’ claims had been resolved. *Id.* The court determined, however, that the putative class claims were “inherently transitory” thereby failing to render moot the putative class claims. *Id*.

Petitioners’ claims prove “inherently transitory” because they will certainly repeat as to the proposed putative class members. The Court finds it certain that the

similarly situated Petitioners will have the same complaint as De La Cruz, Hernandez, Orozco, and Torres. *Sequen v. Albarran*, at 1120. (Doc. 10 at ¶ 63. & Doc. 27 at 8-9.) The Court further finds that the putative class members remain detained in short-term detention facilities in the District of Montana. Accordingly, even though Hernandez's claims have been resolved momentarily, the claims of the putative class members remain to afford standing for the putative class. The Court adds Jose Alfredo Martinez Alaniz ("Martinez") as named class representative. The Court proceeds to the merits of the case.

**II. The Proposed Subclass.**

Courts in the Ninth Circuit have taken different approaches to whether a court may certify a class other than the one described in the complaint. *Davis v. AT&T Corp.*, 2017 WL 1155350, at *2, (S.D. Cal. 2017). Courts may decline to certify a class because they are "bound by the class definition provided in the complaint," and the court will not consider certification beyond without an amended complaint. *Berlowitz v. Nob Hill Masonic Mgmnt.*, 1996 WL 724776, at 2* (N.D. Cal. 1996). Other Ninth Circuit Courts have taken a different approach and agreed to consider certification of a class other than that described in the complaint if "the proposed modifications are minor, require no additional discovery, and cause no prejudice to the defendants." *In re: TFT-LCD (Flat Panel) Antitrust Litig.,* 267 F.R.D. 583, 590-91 (N.D. Cal. 2010). Courts also consider

certification of a modified class if it is narrower than the class alleged in the complaint. *Abdeljalil v. General Elec. Capital Corp.*, 306 F.R.D. 303, 306 (S.D. Cal. 2015).

The proposed subclass involves a minor modification to the original proposed class, does not require additional discovery, and Respondents do not suffer prejudice. Petitioners habeas claims for the subclass rely upon whether the putative class members were wrongfully arrested under § 1226(a). The proposed class relies upon whether the putative class members wrongfully remain in custody. Both classes require evidence of the arrests regarding each putative class member.

Federal Rule of Civil Procedure enables district courts to break a class into subclasses "[w]hen appropriate." *Buus v. WAMU Pension Plan*, 251 F.R.D. 578, 581 (W.D. Wash. 2008). Each subclass is treated as an individual class and must independently meet the requirements of Rule 23(a) & (b). *Buus*, at 581. Petitioners' proposed class is for wrongly detained persons in custody. Petitioners' proposed subclass is for people who are wrongly arrested under § 1226(a). The subclass is particularly appropriate here because each of the classes apply to the same subset of Petitioners' original proposed class. The only significant difference between the proposed class and subclass is the relief sought.

Petitioners move for an order certifying the following class:

> "Noncitizens who are present within the District of Montana and detained at CCDC or other detention facilities within the District who (1) have entered or will enter the United States without inspection and are or will be present in the interior of the United States, (2) were not or will not be apprehended upon arrival into the United States, and (3) are not or will not be subject to detention under 8 U.S.C. §§ 1226(c), 1225(b)(1), or 1231 at the time the Department of Homeland Security makes an initial custody determination."

(Doc. 10.)

Petitioners added the following subclass in their Brief in Support of Class Certification and Class Relief:

> "All persons detained in the District of Montana, who were arrested or will be arrested on or after July 25, 2026, for alleged civil immigration violations, and for whom the detaining officer failed to obtain a warrant and did not conduct a pre-arrest, individualized assessment of probable cause that the person poses a flight risk."

(Doc. 27.)

## III. Rule 23(a)

The Court now considers whether the proposed class and subclass meet the requirements of Rule 23(a). The Court will analyze whether the proposed class and subclass meet the requirements of Rule 23(a) &(b). The requirements of Rule 23(a) & (b) apply the same to both the proposed class and subclass.

### a. Numerosity

Numerosity is satisfied if "the class is so large that joinder of all members is impracticable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

Generally, courts find the numerosity requirement satisfied "when a class includes at least 40 members." *Rannis v. Recchia*, 380 Fed. Appx. 646, 651 (9th Cir. 2010). The Court recognizes that the putative class appears to include around 38 people at this time. (Doc. 34 at 2 & Doc. 27 at 10.) The Court acknowledges that this amount falls slightly below the 40 members requirement. The Court finds numerosity sufficiently demonstrated. It remains impracticable to join each of these cases, particularly considering the difficulties facing putative class members in obtaining counsel. The Court further notes that the putative class likely will grow as the Government continues to detain people who meet the proposed conditions.

Respondents argue that Petitioners have failed to meet their burden of proving Rule 23(a)'s numerosity requirement. (Doc. 28 at 7.) Evidence shows that CBP has detained at least 38 people in Montana as of August 21, 2026. (Doc. 27-4 at 2.) The Court finds Petitioners have demonstrated by a preponderance of the evidence that numerosity exists. The record further indicates CBP officers attempted to pressure some Petitioners into voluntarily deporting. (Doc. 27-2 ¶¶ 53-67.)

**b. Commonality**

Commonality represents the second Rule 23(a) requirement. This prong requires "a plaintiff . . . show that 'there are questions of law or fact common to the class.'" *Dukes*, 564 U.S. at 349 (quoting Fed. R. Civ. Proc. 23(a)(2)). The proposed class's claims must "depend upon a common contention." *Id.* The common

contention "must be of such a nature that it is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Accordingly, "what matters to class certification . . . is not the raising of common questions—even in droves—but rather, the capacity of a class wide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* at 350.

Commonality should be "construed permissively." *Hanlon*, 150 F.3d at 1019. Thus, "[a]ll questions of fact and law need not be common to satisfy the rule." *Id.*; *see also Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012). The Ninth Circuit determined in *Evon* that "commonality exists" even "[w]here the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class." *Id.* The commonality "standard is "readily met" when plaintiffs seek prospective relief "challeng[ing] a system-wide practice or policy that affects all of the putative class members." *Mansor v. United States Citizenship and Immigration Services*, 345 F.R.D. 193, 204 (W.D.Wash. 2023). Indeed, the Ninth Circuit has recognized that "in a civil-rights suit . . . commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Gonzalez v. United States Immigration and Customs Enforcement*, 975 F.3d 788, 808 (9th Cir. 2020) (citations omitted).

The Court understands that the claims of the putative class members present factual differences. The Court determines, however, that each putative class member presents shared legal issues and a common core of facts. *See Rodriguez v. Hayes*, 591 F.3d 1105 (9th Cir. 2010) (describing commonality as "look[ing] only for some shared legal issue or a common core of facts"). *Bautista* concluded that "[s]uch common injury can be resolved in a single stroke upon the determination that the new DHS policy is in violation of their due process rights." 813 F. Supp. 3d at 1118.

The Court recognizes that the issue in *Bautista*, *Ramirez*, and *Rodriguez*, all addressed the petitioners' wrongful detention under § 1225(b)(2)(A). To the extent putative class members present the same challenge here, the Court determines that commonality clearly exists. The Court agrees that the issues presented here also differ as the Government detains the putative subclass members pursuant to § 1226(a). The Court finds, however, that common answers exist that likely would drive the resolution of the litigation. *See Dukes*, 564 U.S. at 350.

Petitioners challenge the Government's policy and practice of consistently failing to follow the proper procedures under § 1226(a). (Doc. 27 at 2.) The Court observes that this conclusion remains supported by the fact that the Court granted relief to Hernandez and then De La Cruz and his daughter "by incorporating the same legal reasoning to answer the common legal question [], while the government []repeatedly used the same legal reasoning to defend their statutory interpretation by

incorporating their previous briefing by reference." *Ramirez*, 823 F. Supp. 3d at 1218.

The Court remains unpersuaded by Respondent's argument that Petitioners fail to meet the commonality requirement. Petitioners request the Court to determine whether the Government's policy and practice fail to meet the procedural requirements under § 1226(a); and (2) whether the putative class members are being wrongfully detained. The putative class members share common legal issues regarding the procedures of § 1226(a). The putative class members share a common core of facts. The Court recognizes that every putative class member may not share the same exact factual circumstances. The Court can determine the common injuries based upon the current policy and practice of the Government. The Court finds Petitioners have established the commonality element.

**c. Typicality**

The third requirement of Rule 23(a) involves typicality. "The claims of the representative party must be typical of the class claims." *Gonzalez*, 975 F.3d at 809 (citing Fed. R. Civ. P. 23(a)(3)). "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020; *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D.Cal.1985). Typicality looks to "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the

named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

"Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Hanon*, 976 F.2d at 508. Typicality represents a "permissive standard," *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003), but class certification proves inappropriate "if there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." *Hanon*, 976 F.2d at 508. Together, commonality and typicality "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical" and whether the class representative's and class claims are "so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982)

The Court recognizes that Named Plaintiff Hernandez no longer remains in custody. (Doc. 16.) Plaintiff Martinez requests to be added as named Plaintiff. (Doc. 27 at 8.) Martinez presents issues and factual circumstances typical to the class. Like every member of the class, Martinez is a noncitizen who resides in the United States and entered without admission, was recently intercepted and arrested by DHS agents within the interior, rather than upon arriving in the country. Martinez claims to have

been provided with inadequate procedural protections due to the Government's failure to follow the required procedures under § 1226(a). "The named plaintiff[] thus allege[s] the same or a similar injury as the rest of the putative class; [he] allege[s] that this injury is a result of a course of conduct that is not unique to any of them; and [he] allege[s] that the injury follows from the course of conduct at the center of the class claims." *Parsons*, 754 F.3d at 685. Rule 23(a) requires only that their claims be 'typical' of the class, not that they be identically positioned to each other or to every class member." *Id*. at 686. The Ninth Circuit recognizes that "[d]iffering factual scenarios resulting in a claim of the same nature as other class members does not defeat typicality." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 n.9 (9th Cir. 2011).

**d. Adequacy**

The final requirement of Rule 23(a) addresses adequacy. Adequacy looks at whether "the representative parties will fairly and adequately protect the interests of the class." *See Hanlon*, 150 F.3d at 1020 (quoting Fed. R. Civ. P. 23(a)(4)). To evaluate adequacy, the Court looks to whether (1) the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) whether named plaintiffs and their counsel prosecute the action vigorously on behalf of the class. *See Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). The named plaintiffs and their counsel must have "sufficient 'zeal and competence'

to protect the interests of the rest of the class." *Doe v. Wolf*, 424 F. Supp. 3d 1028, 1043 (S.D. Cal. 2020) (quoting *Fendler v. Westgate-Cal. Corp.*, 527 F.2d 1168, 1170 (9th Cir. 1975)).

The Court recognizes that Hernandez already has received habeas relief. The Court determines that the new named Plaintiff, Martinez, pursues a "'mutual goal' with the other class to challenge the allegedly unlawful practices and to 'obtain declaratory . . . relief that would not only cure this illegality but remedy the injury suffered by all current and future class members.'" *Bautista*, 813 F. Supp. 3d at 1121 (quoting *Nightingale v. U.S. Citizenship & Immigr. Servs.*, 333 F.R.D. 449, 462 (N.D. Cal. 2019)).

The Court also sees no adequacy concerns with proposed class counsel. Plaintiff's counsel have litigated three immigration cases in this Court and are otherwise experienced in litigation and have appeared in numerous federal district courts among other courts. The Court finds nothing in the record to suggest that Plaintiff's counsel have any conflicts of interest with other class members. The Court concludes that counsel meet Rule 23(a)(4)'s adequacy requirement. The Court further concludes that appointment of Plaintiff's counsel as class counsel satisfies the requirements of Rule 23(g).

## IV. Rule 23(b)(1)

When a proposed class satisfies the prerequisites of Rule 23(a), the Court must determine whether the class is maintainable under Rule 23(b). *DZ Reserve v. Meta Platforms, Inc.*, 96 F.4th 1223, 1232 (9th Cir. 2024) In other words, if the Court finds a class satisfies the requirements of Rule 23(a), it must next determine the class "fit[s] into at least one of three categories outlined in Rule 23(b)." *Id.* A class can be maintained under Rule 23(b)(1)(A) if "prosecuting separate actions by or against individual class members would create a risk of 'inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class.'" Fed. R. Civ. P. 23(b)(1)(A).

Petitioners assert warrantless arrests by the Government absent individualized determinations of flight risk. Petitioners contend that individual adjudications of putative class members' claims could produce inconsistent results. (Doc. 27 at 13.) The Court recognizes commonality exists as the putative class members challenge the Government's practice of improperly detaining individuals without having followed the required procedures under § 1226. The Court recognizes that minor factual differences exist in each arrest. The claims do not create an "incompatible standard of conduct" in determining whether the arrest was made in compliance of

§ 1226. Certifying a class under Rule 23(b)(2) proves more appropriate at this stage in the proceedings.

## V. Rule 23(b)(2)

A class is maintainable under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate responding the class as a whole." Fed. R. Civ. P. 23(b)(2). "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Gonzalez*, 975 F.3d at 812.

"Courts have long recognized the benefits conferred by the class action mechanism over numerous individual actions." *Smith v. Los Angeles Unified School Dist*., 830 F.3d 843, 863 (9th Cir. 2016). The benefits arise particularly in civil rights actions like this one where a government practice or policy is at issue. *Parsons*, 754 F.3d at 686-87. *Parsons* noted that the primary purpose of Rule 23(b)(2) "has always been the certification of civil rights class actions." *Id.* "'[I]t is sufficient' to meet the requirements of Rule 23(b)(2) that 'class members complain of a pattern or practice that is generally applicable to the class as a whole.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010).

The Court concludes the requested declaratory relief remains generally applicable to all members of the proposed class. The Court recognizes that an order

issuing declaratory relief and a decision that the current practices violate statutory and constitutional law would not provide habeas relief or release on bond to the petitioners. It merely provides them with the opportunity to pursue individualized relief without having to rehash the legal issues at the foundation of their claims. Any differences that may exist in class members' entitlement to be released presents a different matter than their entitlement to procedural protections under § 1226(a).

*Bautista* discussed the court's conclusion in *Franco-Gonzales v. Napolitano*, where the court determined that a class action could be maintained under Rule 23(b)(2). The plaintiffs in *Franco-Gonzales* claimed that the defendants "[had] failed, on a systemic basis, to have adequate procedures in place to both identify mentally incompetent [noncitizens] and provide them with necessary safeguards." *Franco-Gonzales*, No. CV 10-02211 DMG DTBX, 2011 WL 11705815 (C.D. Cal. Nov. 21, 2011). *Bautista* concluded that the petitioners presented very similar circumstances in the immigration context. *Bautista*, 813 F. Supp. 3d at 1124. "[The Government] has failed, on a systemic basis, to provide Petitioners and putative class members with the necessary safeguards imbued by the INA in violation of their rights." *Id*. The Court concludes that class certification remains appropriate as Petitioners have satisfied Rule 23(b)(2).

**VI. Section 1252(f)(1)**

Respondents argue even if the Court certifies a putative class the Court lacks jurisdiction to order classwide injunctive relief. (Doc. 28 at 12.) Respondents further argue the Court is limited to granting only declaratory relief. (*Id*.) Petitioners request this Court provide the following relief: (1) to enjoin Respondents from continuing to detain Petitioners, or in the alternate order bond hearings to be held; (2) to order Respondents are enjoined and restrained from re-detaining Petitioners for any purpose, absent exigent circumstances; and (3) to order immediate release of Petitioners. (Doc. 10 at 37 ¶¶ 3-7.) Petitioners further request habeas relief for the subclass listed in their Brief in Support of Class Certification and Class Relief. (Doc. 28 at 2.)

The U.S. Supreme Court has interpreted § 1252(f)(1) to prohibit federal courts from "entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out the specified statutory provisions." *Garland v. Gonzalez*, 596 U.S. 543, 550 (2022). *Garland* agreed that injunctive relief may be granted in "individual cases." *Id.* Garland concluded, however, that § 1252(f)(1) "'prohibits federal courts from granting classwide injunctive relief.'" *Id.* at 550 (quoting *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481–82 (1999)). Applying this statute, *Garland* held the that district court lacked authority to order bond hearings for a class of individuals detained under 8 U.S.C. § 1231(a)(6). *Id.* at 551.

Respondents argue that Petitioners seek relief that § 1252(f)(1) prohibits. Petitioners ask the Court to enjoin, restrain, or refrain the Government from taking actions to enforce §§ 1225 & 1226(a). Respondents contend that U.S. Supreme Court precedent prohibits these types of relief. The Court recognizes the need to resolve this conflict as Petitioners seek certification under Rule 23(b)(2) for declaratory relief. (Doc. 10 at 37 ¶ 6.)

Section 1252(f)(1) poses no ban to declaratory relief. The U.S. Supreme Court has interpreted § 1252(f)(1) to prohibit class wide injunctive relief regarding the operation of §§ 1225 and 1226. *See Garland v. Aleman Gonzalez*, 596 U.S. 543 (2022). The U.S. Supreme Court has not extended § 1252(f)(1) to other forms of relief including declaratory relief. *See Biden v. Texas*, 597 U.S. 785, 798-99 (2022) (Section 1252(f)'s "title . . . makes clear the narrowness of its scope"); *A.A.D.C.*, 525 U.S. at 481 (By its plain terms, § 1252(f)(1) "is nothing more or less than a limit on injunctive relief.").

Binding Ninth Circuit precedent furthers recognizes the availability of declaratory relief without violating § 1252(f)(1). *See Al Otro Lado v. Exec. Off. for Immigr. Rev.*, 138 F.4th 1102, 1124-25 (9th Cir. 2025), *reversed on other grounds*; *Mullin v. Al Otro Lado*, 146 S. Ct. 2079, 2097 (2026) (affirming that "§ 1252(f)(1) does not 'bar classwide declaratory relief.'") (quoting *Rodriguez v. Hayes*, 591 F.3d

1105, 1119 (9th Cir. 2010)), *cert. granted on other grounds sub nom. Noem v. Al Otro Lado*, —– U.S. ——, 146 S.Ct. 604 (2025).

**VII. Remedy**

The Court remains unclear whether it could provide classwide relief in the form of habeas release. Petitioners argued at the hearing that habeas relief differs from injunctive relief, and, therefore, it is not barred by 1252(f)(1). *Bautista* observed that such relief may run afoul of § 1252(f)(1) to the extent it would force government compliance. *Bautista*, 813 F. Supp. 3d at 1124 n.23. The Court recognizes that a class action may lie in habeas. *Rodriguez v. Hayes*, 591 F.3d 1105, 1117 (9th Cir. 2010) ("While 'ordinarily disfavored,' the Ninth Circuit has recognized that class actions may be brought pursuant to habeas corpus." (citing *Cox v. McCarthy*, 829 F.2d 800, 804 (9th Cir.1987); *see also Mead v. Parker*, 464 F.2d 1108, 1112–13 (9th Cir. 1972) (finding habeas relief to be appropriate in cases "where the relief sought can be of immediate benefit to a large and amorphous group")). The Court further recognizes an individual petition for habeas release may be granted, but the Court cannot fully determine whether classwide habeas release would be permissible under § 1252(f)(1). The questions seems to turn on whether any prospective permanent injunction improperly would "add[] a new procedural step to the Government's operation of covered provisions." *Al Otro Lado*, 138 F.4th at 1125 (citing *Garland*, 596 U.S. at 551)

## ORDER

Accordingly, **IT IS ORDERED**:

- Petitioners Motion to Certify Class and Appoint Class Counsel is **GRANTED.** The Court **CERTIFIES** the Class defined as follows:

  "Noncitizens who are present within the District of Montana and detained at CCDC or other detention facilities within the District who (1) have entered or will enter the United States without inspection and are or will be present in the interior of the United States, (2) were not or will not be apprehended upon arrival into the United States, and (3) are not or will not be subject to detention under 8 U.S.C. §§ 1226(c), 1225(b)(1), or 1231 at the time the Department of Homeland Security makes an initial custody determination."

  The Court also CERTIFIES the following Subclasses:

  Warrantless Arrest Class: All persons since July 25, 2026, who have been arrested or will be arrested in the District of Montana for alleged immigration violations without a warrant and without a pre-arrest, individualized assessment of probable cause that the person is in the United States unlawfully and that the person poses a flight risk.

  Unassessed Escape Risk Subclass: All persons since July 25, 2026, who have been arrested or will be arrested in the District of Montana for alleged immigration violations without a warrant and without a pre-arrest, individualized assessment of probable cause that the person poses a flight risk.

- **IT IS FURTHER ORDERED**, Jose Alfredo Martinez Alaniz is the new Class Representative for the Petitioners.
- **IT IS FURTHER ORDERED**, the Parties are to file simultaneous supplemental briefing addressing the remedy for habeas release, not to exceed 10 pages. The supplemental briefing will be due on September 3, 2026 at 5 P.M.
- **IT IS DECLARED,** the Government cannot detain putative class members if the detaining officer failed to obtain a warrant and did not conduct a pre-arrest, individualized assessment of probable cause that the person poses a flight risk.
- **IT IS FURTHER DECLARED,** the Class members are not subject to mandatory detention unless the Department of Homeland Security makes an initial custody determination under U.S.C. §§ 1226(c), 1225(b)(1), or 1231 subjecting an individual to mandatory detention.
- **IT IS FURTHER DECLARED,** if the Government failed to abide by § 1226 when making the initial arrest of any putative class members, it is a violation of their constitutional rights.
- The Court's previous orders (Doc. 3, Doc. 12, Doc. 16) otherwise remain in effect, including the following requirements:

1. Respondents shall not transfer Petitioners out of the District of Montana or remove them from the United States.
2. Respondents shall provide a list of how the sources of the requested information for each detainee are stored, accessed, and maintained, including but not limited to any arrest warrant, NTA, Form-286, and Form I-213, whether stored electronically, within the E-Cast system, or otherwise. Respondents shall also provide an exemplar of how these documents are stored for an individual detainee for the Court's review.
3. The Court requests the Class Counsel provide the additional names as of August 31, 2026 of those who are currently in custody in the District of Montana.
4. If either party seeks an expedited or enlarged briefing schedule, counsel for that party shall contact
5. t the opposing counsel promptly to meet and confer. The parties shall then file a joint expedited motion, noted for the same day it is filed, that contains either an agreed briefing schedule or the parties' competing proposals for a briefing schedule.

**DATED** this 31st day of August, 2026.

Brian Morris, Chief District Judge
United States District Court