**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**GREAT FALLS DIVISION**

| | |
|---|---|
| JOSE ALFREDO MARTINEZ ALANIZ, individually and on behalf of others similarly situated,<br><br>Petitioners,<br><br>v.<br><br>JESSE SLAUGHTER, Sheriff, Cascade County, et al.,<br><br>Respondents. | **CV-26-280-GF-BMM**<br><br>**ORDER** |

## INTRODUCTION

Jesus Verde Hernandez ("Hernandez") filed a petition for writ of habeas corpus under 28 U.S.C. § 2241, on behalf of himself, and others similarly situated, alleging that Petitioners remain in custody in the District of Montana in violation of the Constitution or laws of the United States. (Doc. 10.) Hernandez obtained habeas relief and no longer serves as the Class representative. (*Id.*) Jose Alfredo Martinez Alaniz ("Martinez") requested to be added as named petitioner and the Court granted this request. (Doc. 41.) The Court granted Petitioners' motion to certify the requested putative class. (*Id.*) The Court also certified two subclasses for Petitioners. (*Id.*) Each

of the subclasses represents persons who had been wrongfully arrested under § 1226(a). (*Id.*)

The Court granted Petitioners' request for class-wide declaratory relief. (*Id.*) The Court declined to grant Petitioners' request for class-wide habeas release and class-wide injunctive relief. (*Id.*) The Government declined to abide by the Court's declaratory judgment and continued to hold wrongfully detained class members. The Court granted additional relief to the Class. (Doc. 49.) The additional relief included ordering the class members to file individual petitions for habeas release. (Doc. 49.) Jose Angel Cortez Hernandez ("Petitioner") files this petition for individual habeas relief which the Court now grants. (Doc. 127.)

## LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). A habeas petitioner must prove by the preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

## DISCUSSION

This Court previously held that the arrest of noncitizen without a warrant or a pre-arrest individualized determination that the noncitizen is likely to escape violates their constitutional rights. (Doc. 16.) The Court further reiterates that the

INA applies § 1226 to Hernandez, Orozco, Torres, and other class members who are unadmitted noncitizens detained in the interior of the country and requires a bond hearing. *See Rodriguez Vazquez*, 2026 WL 2196424.

A noncitizen may be arrested and detained under § 1226 only "on a warrant issued by the Attorney General." 8 U.S.C. § 1226(a) (citation modified). "Issuance of a warrant is a necessary condition to justify discretionary detention under section 1226(a). It follows that absent a warrant a noncitizen may not be arrested and detained under section 1226(a)." *Brice v. Gantt, et al.,* No. CIV-26-1421-D, 2026 WL 2243982, at *3 (W.D. Okla. Aug. 4, 2026) (quoting *Sergio P. v. Bondi*, No. 26-CV-1538, 2026 WL 497290, at *2 (D. Minn. Feb. 23, 2026) (citation modified)).

One exception exists to the warrant requirement under § 1226. Authorized officers may "interrogate any alien or person believed to be an alien" concerning that person's "right to be or to remain in the United States," and can arrest that person "if [the officer] has reason to believe that the [person] . . . is in the United States in violation of any . . . law or regulation [regulating the admission, exclusion, expulsion, or removal of aliens] and *is likely to escape* before a warrant can be obtained for his arrest." 8 U.S.C.A. § 1357(a)(1), (2) (emphasis added). An authorized officer's determination that an arrested person "is likely to escape" requires that the arrested person must "be taken without unnecessary delay for

examination before an officer of the Service having authority to examine aliens as to their right to enter or remain in the United States." *Id.*; *see Makuiza v. Wesling*, 826 F. Supp. 3d 176, 180 (D. Me. 2026).

"[A] custody determination must ordinarily be made within 48 hours, accompanied by a notice to appear, and in the case of continued custody a warrant will be issued *post hoc*," when arrests properly are made without a warrant based on an authorized officers' perception of likely escape. *Makuiza*, 826 F. Supp. 3d at 180 (citing 8 C.F.R. § 287.3(d)). In other words, a proper arrest pursuant to §1226 requires either an arrest warrant that is issued before arrest, or a reasonable belief by an authorized officer upon initial investigation that a noncitizen is in the United States in violation of the law and *presents a risk of escape* if not arrested before a warrant can be obtained.

The Government does not argue that the CBP agent arrested Petitioner pursuant to a pre-arrest warrant. (Doc. 143 at 6.) The Government argues that the CBP agent lawfully arrested Petitioner pursuant to a pre-arrest likelihood of escape assessment under 13 U.S.C. § 1357(a)(2). (Id.) Petitioner, two other class members, and a fourth occupant were traveling in a vehicle in Billings, Montana. (Doc. 126 at 9.) A CBP officer observed Petitioner and the two other class members inside the vehicle. (Id.) The CBP officer did not stop the vehicle but alleges he saw the vehicle run a red light. (Id. at 10 & Doc. 140 at 7.) The CBP

officer contacted Montana Highway Patrol ("MHP") to stop the vehicle. (Doc. 140 at 37) The purported basis for the traffic stop involved a CBP officer having observed the vehicle roll through a red light. (Doc. 127 at 10.) The MHP officer allegedly informed Petitioner that he stopped the vehicle because he failed to activate his turn signal before making a righthand turn. (Id.)

The CPB officer followed the MHP officer while the MHP officer effectuated the traffic stop (Id.) The MHP officer approached the vehicle and asked Petitioner for his license. (Id.) The CBP officer then approached the car and asked Petitioner and the other occupants for their passports. (Id. at 11.) The CBP officer investigated their passports and the CBP officer called for a transport vehicle to transport Petitioner and the other class members. (Id.) The MHP officer spoke with one occupant and apologized to him upon learning the occupant had a family located within the area. (Id.) Petitioner and other occupants were not free to leave during the stop. (Id.) Approximately four more government vehicles arrived at the stop. (Id.) Petitioner and the other class members "fled the vehicle stop on foot" but MHP and CBP officers detained them before they could escape. (Id.) Petitioner and the two other class members were handcuffed and placed in the white transport van. (Id. at 12.)

The arresting officer did not make or document an individualized determination of probable cause of flight risk before apprehending and detaining

Petitioner. (See Doc. 140 at 7, 8.) The I-213 states "while waiting on record checks and for a transport vehicle all subjects fled the vehicle stop on foot." (Doc. 140 at 7.) The I-213 does not discuss that the officers did not have time to obtain a warrant and contains no discussion of flight risk assessment. (Id.) The I-213 simply states Petitioner fled the scene on foot. (Id.) The Court faces the question of whether Petitioner was lawfully arrested pursuant to the flight risk exception under § 1357(a)(2).

An officer has probable cause to arrest under the detention authority of § 1226(a) only when that officer has (1) "reason to believe" that the individual "is in the United States in violation of the law; and (2) is likely to escape before a warrant can be obtained before his arrest." *Ramirez Perez v. Chestnut*, No. 1:26-cv-00277-DJC-CKD P, 2026 WL 2123306, at *3 (E.D. Cal. July 23, 2026). The INA requires that officers make a "particularized inquiry" that the noncitizen is likely to abscond prior to the warrantless arrest for this exception to apply. *Id.* at *4. The court in *Ramirez* found that the petitioner began resisting after he was told he was under arrest. *Id*. The arresting documents did not include whether the arresting officers made any determinations about petitioner's likelihood of escape *before* initiating his warrantless arrest. *Id*. The court ultimately concluded that the exception under § 1357(a)(2) had not been met because the arresting officer based the flight risk assessment on conduct that occurred either during or after arrest. *Id*.

Petitioner attempted to flee the scene after officers stopped the vehicle and ordered the Petitioner to stay put. An MHP officer also apologized to an occupant of the vehicle upon learning one of the occupants had children. Officers did not place handcuffs on Petitioner until after he was detained following his attempt to flee. The arresting officers asked for a transport van before they formally arrested Petitioner. The Court further notes that the arresting officers initiated Petitioner's arrest when the officers ordered the transportation van to the scene. The arresting officers ordered the transport van before the complete investigation of the individual passports of Petitioner and the other passengers. (Doc. 140 at 7.) The arresting officer knew only the following facts when the officer decided to arrest Petitioner and order the transport van: (1) Petitioner was with other class members; (2) the officer allegedly viewed their vehicle roll through a red stop light; (3) Petitioner spoke Spanish; and (4) Petitioner provided his passport as identification.

DHS's November 23, 2021 Broadcast Statement of Policy provides in further determining whether an individual poses a flight risk that officers must "consider the totality of the circumstances known to the officer before making the arrest," including (1) the officer's "ability to determine the individual's identity," (2) any "knowledge of that individual's prior escapes or evasions of immigration authorities," (3) an individual's attempted flight from an officer, (4) the individual's "ties to the community (such as a family, home, or employment) or

lack thereof," and (5) "other specific circumstances that weigh in favor or against a reasonable belief that the subject is likely to abscond." *United Farm Workers*, 829 F. Supp. 3d 801, 811 n.2 (E.D. Cal. 2026); *see* Broadcast Statement at 17–18. The Government argues that this policy statement does not apply to the arresting agency, CBP, and instead applies only to ICE. (Doc. 143 at 7.) The Court notes that the Broadcast Statement Policy may not directly apply to CBP, but the Government still must abide by § 1357(a)(2) of the INA. The above factors define and explain the administration of the flight risk assessment under § 1357(a)(2).

The Government further cites a 52-year-old case from the Ninth Circuit establishing a likelihood-of escape assessment. *United States v. Meza-Campos*, 500 F.2d 33, (9th Cir. 1974) (per curiam). *Meza-Campos* determined that nervousness from the petitioner satisfied the § 1357(a)(2) flight risk assessment. *Id*. The Court finds that case law and the method in determining a flight risk under § 1357(a)(2) have since evolved. The arresting officer failed to conduct any sort of investigation into whether Petitioner posed a flight risk. The I-213 does not discuss flight risk apart from Petitioner's flee from the scene. The arresting officer did not ask of Petitioner's long-term residence, family ties, length of time in the United States, or anything that could have established the likelihood of Petitioner being a flight risk before a warrant could be obtained for his arrest.

The Court finds that Petitioner fleeing from the scene may make an officer reasonably believe that Petitioner will abscond for further proceedings. *United Workers*, 829 F.Supp.3d at 848. The Court further finds that § 1357(a)(2) does not mandate any particular inquiry before a warrantless arrest, and flight represents just one factor. The total absence of documented questions in the record strongly indicates that the officers "did not seek what they did not wish to find." *Ramirez Ovando v. Noem*, 810 F.Supp.3d 1209, 1231 (D. Colo. 2025). Flight from the scene remains a strong factor in determining whether a person may abscond from future proceedings. The only factor in favor of Petitioner meeting the qualifications as a flight risk occurred after officers initiated the arrest. The arresting officer's documentation fails to discuss other factors, thereby undercutting the Government's arguments that Petitioner likely will abscond for future proceedings. The Court concludes that flight alone after officers initiate an arrest fails to meet the requirements for § 1357(a)(2).

"This practice of after-the-fact arrest warrants can be called many things—illegal, improper, and unconstitutional, among them. But whatever label one wishes to apply, the practice is fundamentally at odds with and offensive to lawful, constitutional behavior in this country." *Parada Cruz*, 2026 WL 1027441, at *5. The Court determines that immediate release proves appropriate, available, and proper in this case to remedy the constitutional and statutory violations committed by the

Government against Cortez Hernandez. The Court defers ruling on the matter of attorneys' fees and costs. Should Cortez Hernandez's counsel wish to pursue a claim for attorneys' fees and costs under the Equal Access to Justice Act (EAJA), they are instructed to file a separate motion on the issue in accordance with Local Rules.

Accordingly, **IT IS SO ORDERED.**

- Cortez Hernandez's Petition (Doc. 127) is **GRANTED** as to himself individually.
- The Court orders the Government to release Cortez Hernandez from custody within 24 hours of this Order, under appropriate conditions of release, and to facilitate his transportation from the detention facility by notifying his counsel when and where he can be collected.
- **IT IS FURTHER ORDERED** that the Government must return Cortez Hernandez's personal property, including any personal identification and employment authorization documents, upon his release.
- **IT IS FURTHER ORDERED** that the Government is **PERMANENTLY ENJOINED** from detaining Cortez Hernandez pursuant to 8 U.S.C. § 1225(b)(2)(A).
- **IT IS FURTHER ORDERED** that the Government may not re-detain Petitioner pursuant to 8 U.S.C. § 1226(a) during the pendency of his

current removal proceedings until after an immigration court hearing is held, with adequate notice, to determine whether detention is appropriate under 8 U.S.C. § 1226(a) and its implementing regulations. At this hearing, the Government must bear the burden of establishing that detention is appropriate by clear and convincing evidence.

- If Petitioner becomes subject to a final order of removal and Petitioner receives notice of such order, the Government may detain Petitioner for the sole and limited purpose of executing removal pursuant to 8 U.S.C. § 1231(a)(2)(A). In such an event, Respondents **SHALL** provide a bond hearing in the timeframe required by law.
- The Court orders the Government to certify compliance with this Order by filing on the docket.
- The Court retains jurisdiction to enforce its order and judgment. Cortez Hernandez may move to reopen this case to enforce the judgment without filing a separate case.

**DATED** this 5th day of October, 2026.

Brian Morris, Chief District Judge
United States District Court