**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**GREAT FALLS DIVISION**

| | |
|---|---|
| JOSE ALFREDO MARTINEZ ALANIZ, individually and on behalf of others similarly situated,<br><br>Petitioners,<br><br>v.<br><br>JESSE SLAUGHTER, Sheriff, Cascade County, et al.,<br><br>Respondents. | **CV-26-280-GF-BMM**<br><br>**ORDER** |

## INTRODUCTION

Jesus Verde Hernandez ("Hernandez") filed a petition for writ of habeas corpus under 28 U.S.C. § 2241, on behalf of herself, and others similarly situated, alleging that Petitioners remain in custody in the District of Montana in violation of the Constitution or laws of the United States. (Doc. 10.) Hernandez obtained habeas relief and no longer serves as the Class representative. (*Id.*) Jose Alfredo Martinez Alaniz ("Martinez") requested to be added as named petitioner and the Court granted this request. (Doc. 41.) The Court granted Petitioners' motion to certify the requested putative class. (*Id.*) The Court also certified two subclasses for Petitioners. (*Id.*) Each

of the subclasses represents persons who had been wrongfully arrested under § 1226(a). (*Id.*)

The Court granted Petitioners' request for class-wide declaratory relief. (*Id.*) The Court declined to grant Petitioners' request for class-wide habeas release and class-wide injunctive relief. (*Id.*) The Government declined to abide by the Court's declaratory judgment and continued to hold wrongfully detained class members. The Court granted additional relief to the Class. (Doc. 49.) The additional relief included ordering the class members to file individual petitions for habeas release. (Doc. 49.) Glendis Yorelini Melgar Quintanilla ("Melgar Quintanilla" or "Petitioner") files an individual petition for habeas release. (Doc. 180.)

## LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). A habeas petitioner must prove by the preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

## DISCUSSION

This Court previously held that the arrest of noncitizens without a warrant or a pre-arrest individualized determination that the noncitizen is likely to escape violates their constitutional rights. (Doc. 16.) The Court further reiterates that the

INA applies § 1226 to Hernandez, Orozco, Torres, and other class members who are unadmitted noncitizens detained in the interior of the country and grants them a bond hearing. *See Rodriguez Vazquez*, 2026 WL 2196424.

A noncitizen may be arrested and detained under § 1226 only "on a warrant issued by the Attorney General." 8 U.S.C. § 1226(a) (citation modified). "Issuance of a warrant is a necessary condition to justify discretionary detention under section 1226(a). It follows that absent a warrant a noncitizen may not be arrested and detained under section 1226(a)." *Brice v. Gantt, et al.,* No. CIV-26-1421-D, 2026 WL 2243982, at *3 (W.D. Okla. Aug. 4, 2026) (quoting *Sergio P. v. Bondi*, No. 26-CV-1538, 2026 WL 497290, at *2 (D. Minn. Feb. 23, 2026) (citation modified)).

One exception exists to the warrant requirement under § 1226. Authorized officers may "interrogate any alien or person believed to be an alien" concerning that person's "right to be or to remain in the United States," and can arrest that person "if [the officer] has reason to believe that the [person] . . . is in the United States in violation of any . . . law or regulation [regulating the admission, exclusion, expulsion, or removal of aliens] and *is likely to escape* before a warrant can be obtained for his arrest." 8 U.S.C.A. § 1357(a)(1), (2) (emphasis added). An authorized officer's determination that an arrested person "is likely to escape" requires that the arrested person must "be taken without unnecessary delay for

examination before an officer of the Service having authority to examine aliens as to their right to enter or remain in the United States." *Id.*; *see Makuiza v. Wesling*, 826 F. Supp. 3d 176, 180 (D. Me. 2026).

"[A] custody determination must ordinarily be made within 48 hours, accompanied by a notice to appear, and in the case of continued custody a warrant will be issued *post hoc*," when arrests properly are made without a warrant based on an authorized officers' perception of likely escape. *Makuiza*, 826 F. Supp. 3d at 180 (citing 8 C.F.R. § 287.3(d)). In other words, a proper arrest pursuant to §1226 requires either an arrest warrant that is issued before arrest, or a reasonable belief by an authorized officer upon initial investigation that a noncitizen is in the United States in violation of the law and *presents a risk of escape* if not arrested before a warrant can be obtained.

The Government reasserts their arguments that the Customs and Border Patrol ("CBP") agent lawfully arrested Petitioner pursuant to a pre-arrest likelihood of escape assessment under 13 U.S.C. § 1357(a)(2). (Doc. 153 at 7. & Doc. 208 at 2.) A Roosevelt County Sheriff Deputy stopped Petitioner for alleged erratic driving. (Doc. 207 at 14.) The deputy sheriff called CBP to assist with running a record check on Petitioner. (Id.) Nothing in the narrative "Encounter" section of petitioner's I-213 indicates that the CBP officer asked any questions regarding Petitioner's family, community ties, residence, or anything else that

could indicate that the officer had made an individualized flight risk assessment. (Id.) A section labeled "I-200" indicates that an I-200 was not issued at the time of the arrest. (Id. at 12.) The document also states that "[f]actors indicating the subject is likely to escape before a warrant could be obtained for his arrest include; Subject has no family, property, or vehicles in his name which leads to her have no ties to the community." (Id.) Nothing in the record indicates when the CBP agent solicited this information from Petitioner. (Id.) The Court faces the question of whether Petitioner was lawfully arrested pursuant to the flight risk exception under § 1357(a)(2).

An officer possesses probable cause to arrest under the detention authority of § 1226(a) only when that officer has (1) "reason to believe" that the person "is in the United States in violation of the law; and (2) is likely to escape before a warrant can be obtained before his arrest." *Ramirez Perez v. Chestnut*, No. 1:26-cv-00277-DJC-CKD P, 2026 WL 2123306, at *3 (E.D. Cal. July 23, 2026). The INA requires that officers make a "particularized inquiry" that the noncitizen is likely to abscond before the warrantless arrest for this exception to apply. *Id.* at *4. Courts have held that the determination must be made based on information known to the officer before the arrest. *Id.* (finding that resisting could not be evidence of flight when it occurred during or after arrest); *Ramiez Ovando v. Noem,* 810 F. Supp. 3d 1209, 1231-32 (D. Colo. 2025) (requiring evidence that the arresting

officer developed probable cause before the arrest); *M-J-M-A v. Hermosillo,* 822 F. Supp. 3d 1147, 1148 (D. Or. 2026) (holding an arrest illegal when there was no evidence that officers determined likelihood of escape before arrest).

"[N]o family, property, or vehicles in his name which leads to him have no ties to the community. . ." represents valid evidence when assessing whether someone is a flight risk. Doc. 207 at 14; *United Farm Workers*, 829 F. Supp. 3d 801, 811 n.2 (E.D. Cal. 2026); *see* Broadcast Statement of Policy at 17–18. The officer must have that information *before* the arrest for it to constitute a particularized inquiry that the Petitioner was likely to abscond. Nothing in the record indicates that the officer collected this information before Petitioner's arrest. Nothing in the narrative "Encounter" section indicates that the officer asked Petitioner any questions to elicit this information before her arrest. (Doc. 207 at 14.) Nothing in the record indicates how or when the arresting officer obtained this information. (*Id.* at 14-16.)

In fact, the record leads the Court to conclude that CBP determined to arrest Petitioner before the arresting officer arrived on scene. (Id.) The Court bases its conclusion on the fact the Supervisory Border Patrol Agent ("SBPA") requested that the sheriff's deputy detain Petitioner until Plentywood Border Patrol Agents could arrive and *transfer custody*. (Id.) The record does not indicate that the SBPA elicited the flight risk information from Petitioner before CBP decided to arrest Petitioner.

The Court finds that the officers did not make the flight risk before the officers arrested Petitioner.

"This practice of after-the-fact arrest warrants can be called many things—illegal, improper, and unconstitutional, among them. But whatever label one wishes to apply, the practice is fundamentally at odds with and offensive to lawful, constitutional behavior in this country." *Parada Cruz*, 2026 WL 1027441, at *5. The Court determines that immediate release proves appropriate, available, and proper in this case to remedy the constitutional and statutory violations committed by the Government against Melgar Quintanilla. The Court defers ruling on the matter of attorneys' fees and costs. Should Melgar Quintanilla's counsel wish to pursue a claim for attorneys' fees and costs under the Equal Access to Justice Act (EAJA), they are instructed to file a separate motion on the issue in accordance with Local Rules.

Accordingly, **IT IS SO ORDERED.**

- Melgar Quintanilla's Petition (Doc. 180) is **GRANTED as to herself individually.**
- The Court orders the Government to release Melgar Quintanilla from custody within 24 hours of this Order, under appropriate conditions of release, and to facilitate his transportation from the detention facility by notifying his counsel when and where he can be collected.

- **IT IS FURTHER ORDERED** that the Government must return Melgar Quintanilla's personal property, including any personal identification and employment authorization documents, upon his release.
- **IT IS FURTHER ORDERED** that the Government is **PERMANENTLY ENJOINED** from detaining Melgar Quintanilla pursuant to 8 U.S.C. § 1225(b)(2)(A).
- **IT IS FURTHER ORDERED** that the Government may not re-detain Petitioner pursuant to 8 U.S.C. § 1226(a) during the pendency of his current removal proceedings until after an immigration court hearing is held, with adequate notice, to determine whether detention is appropriate under 8 U.S.C. § 1226(a) and its implementing regulations. At this hearing, the Government must bear the burden of establishing that detention is appropriate by clear and convincing evidence.
- If Petitioner becomes subject to a final order of removal and Petitioner receives notice of such order, the Government may detain Petitioner for the sole and limited purpose of executing removal pursuant to 8 U.S.C. § 1231(a)(2)(A). In such an event, Respondents **SHALL** provide a bond hearing in the timeframe required by law.

- The Court orders the Government to certify compliance with this Order by filing on the docket.
- The Court retains jurisdiction to enforce its order and judgment. Melgar Quintanilla may move to reopen this case to enforce the judgment without filing a separate case.

**DATED** this 7th day of October, 2026.

Brian Morris, Chief District Judge
United States District Court