**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**GREAT FALLS DIVISION**

| | |
|---|---|
| JOSE ALFREDO MARTINEZ ALANIZ, individually and on behalf of others similarly situated,<br><br>Petitioners,<br><br>v.<br><br>JESSE SLAUGHTER, Sheriff, Cascade County, et al.,<br><br>Respondents. | **CV-26-280-GF-BMM**<br><br>**ORDER** |

## INTRODUCTION

Agustin Gutierrez Lopez ("Petitioner") files an individual petition for habeas release. (Doc. 253.) The Government opposes the petition. (Doc. 275.) The Court now grants habeas release.

## LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). A habeas petitioner must prove by the preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

## DISCUSSION

This Court previously held that the arrest of noncitizens without a warrant or a pre-arrest individualized determination that the noncitizen is likely to escape violates their constitutional rights. (Doc. 16.) The Court further reiterates that the Immigration and Naturalization Act ("INA") applies § 1226 to Hernandez, Petitioner, and other class members who are unadmitted noncitizens detained in the interior of the country and grants them a bond hearing. *See Rodriguez Vazquez*, 2026 WL 2196424.

A noncitizen may be arrested and detained under § 1226 only "on a warrant issued by the Attorney General." 8 U.S.C. § 1226(a) (citation modified). "Issuance of a warrant is a necessary condition to justify discretionary detention under section 1226(a). It follows that absent a warrant a noncitizen may not be arrested and detained under section 1226(a)." *Brice v. Gantt, et al.,* No. CIV-26-1421-D, 2026 WL 2243982, at *3 (W.D. Okla. Aug. 4, 2026) (quoting *Sergio P. v. Bondi*, No. 26-CV-1538, 2026 WL 497290, at *2 (D. Minn. Feb. 23, 2026) (citation modified)).

One exception exists to the warrant requirement under § 1226. Authorized officers may "interrogate any alien or person believed to be an alien" concerning that person's "right to be or to remain in the United States," and can arrest that person "if [the officer] has reason to believe that the [person] . . . is in the United

States in violation of any . . . law or regulation [regulating the admission, exclusion, expulsion, or removal of aliens] and *is likely to escape* before a warrant can be obtained for his arrest." 8 U.S.C.A. § 1357(a)(1), (2) (emphasis added). An authorized officer's determination that an arrested person "is likely to escape" requires that the arrested person must "be taken without unnecessary delay for examination before an officer of the Service having authority to examine aliens as to their right to enter or remain in the United States." *Id.*; *see Makuiza v. Wesling*, 826 F. Supp. 3d 176, 180 (D. Me. 2026).

"[A] custody determination must ordinarily be made within 48 hours, accompanied by a notice to appear, and in the case of continued custody a warrant will be issued *post hoc*," when arrests properly are made without a warrant based on an authorized officers' perception of likely escape. *Makuiza*, 826 F. Supp. 3d at 180 (citing 8 C.F.R. § 287.3(d)). In other words, a proper arrest pursuant to §1226 requires either an arrest warrant that is issued before arrest, or a reasonable belief by an authorized officer upon initial investigation that a noncitizen is in the United States in violation of the law and presents a risk of escape if not arrested before a warrant can be obtained.

The Government concedes that officers failed to arrest Petitioner pursuant to a warrant. (Doc. 275 at 2.) The Government incorporates their previous arguments regarding the Court's jurisdiction (Doc. 13 at 11-14) but declines to reiterate them

in full. (Doc. 275 at 2 n.1.) The Government argues that the Border Patrol agent (the "BPA") lawfully arrested Petitioner pursuant to a pre-arrest likelihood of escape assessment under 13 U.S.C. § 1357(a)(2). (Doc. 275 at 2.)

A BPA observed a white GMC Savana van bearing a Colorado license plate. (Doc. 269 at 4.) Another BPA allegedly saw the same van performing construction on a house in Sheperd, Montana. (*Id.*) BPA concluded that these workers were part of an out-of-state construction crew. (*Id.*) BPA further concluded that the construction crew allegedly employed undocumented persons. (*Id.*) BPA then investigated the registration of the van to determine the owner. (*Id.*) BPA ran a record check on the owner after determining the owner of the van. (*Id.*)

The record check investigation resulted in BPA finding that the registered owner of the van had a final order of removal from the United States. (*Id.*) The record check also contained prior photographs of the van's registered owner. (*Id.*) BPA identified the driver of the van based upon these photos. (*Id.*) BPA followed the vehicle and eventually conducted a stop on the vehicle. (*Id.* at 5.) There were four passengers in the vehicle at the time of the stop. (*Id.*) Petitioner was a passenger in the back seat at the time of the stop. (*Id.*) BPA identified Petitioner. (*Id.*)

BPA alleges he questioned all four passengers in both English and Spanish. (*Id.*) Petitioner allegedly admitted that he did not have authority to be in the United

States. (*Id.*) BPA arrested Petitioner based on Petitioner's admissions, immigration record checks, and the totality of the circumstances. (*Id.*) BPA initially decided to hold Petitioner "pursuant to [8 U.S.C. § 1225] in Department of Homeland Security custody pending removal proceedings/ immigration hearing." (*Id.* at 6.)

The Court has previously held that detaining people in Petitioner's situation under § 1225 is unlawful and violates their due process rights. *See Orozco-Ramirez v. Visser*, 834 F. Supp. 3d 1053, 1064–72 (D. Mont. 2026); *Torres v. Slaughter*, No. 26-cv-271 (D. Mont. July 7, 2026), (Doc. 10 at 22–25); *see also Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1193 (9th Cir. 2026) (agreeing with this Court's statutory interpretation). The Court emphasizes that any arrest of Petitioner made pursuant to § 1225 remains invalid based on the facts of the current petition. The Government fails to address this fact and instead recharacterizes Petitioner's detention pursuant to § 1226. The Court will proceed to analyze Petitioner's arrest pursuant to § 1226.

An officer possesses probable cause to arrest under the detention authority of § 1226(a) only when that officer has (1) "reason to believe" that the person "is in the United States in violation of the law; and (2) is likely to escape before a warrant can be obtained before his arrest." *Ramirez Perez v. Chestnut*, No. 1:26-cv-00277-DJC-CKD P, 2026 WL 2123306, at *3 (E.D. Cal. July 23, 2026). The INA requires that officers make a "particularized inquiry" that the noncitizen is

likely to abscond before the warrantless arrest for this exception to apply. *Id.* at *4. Courts have held that the determination must be made based on information known to the officer before the arrest. *Id. Ramiez Ovando v. Noem,* 810 F. Supp. 3d 1209, 1231-32 (D. Colo. 2025) (requiring evidence that the arresting officer developed probable cause before the arrest); *M-J-M-A v. Hermosillo,* 822 F. Supp. 3d 1147, 1148 (D. Or. 2026) (classifying an arrest as illegal when no evidence existed that officers had determined likelihood of escape before arrest).

The arresting BPA allegedly concluded that Petitioner was likely to escape before warrants could be issued because Petitioner had no family, property, or vehicles in their name, Petitioner's employment location varied, and thus no ties to the community. (Doc. 269 at 15.) The fact that Petitioner has no ties to the community represents the only evidence in favor of Petitioner being a flight risk. *United Farm Workers*, 829 F. Supp. 3d 801, 811 n.2 (E.D. Cal. 2026); *see* Broadcast Statement of Policy at 17–18. Petitioner has lived in the United States for over six years. (Doc. 310-1 at ¶ 3.) Petitioner states he has family in the United States (*Id.* at ¶ 5.) Petitioner asserts that the arresting officer failed to ask Petitioner about Petitioner's address in the United States. (*Id.* at ¶ 18.)

Petitioner alleges he dislocated his left arm about six weeks ago. (*Id.* at ¶ 6.) Petitioner further alleges doctors in Colorado recommend that Petitioner undergo surgery. (*Id.* at ¶ 7.) Petitioner describes that his injury causes him significant pain

every day. (*Id*. at ¶ 10.) BPA failed to include information about Petitioner's injuries in the likelihood of escape analysis. BPA noted that Petitioner has Colorado convictions for a DUI and a failure to appear from 2023. (Doc. 269 at 4.) BPA also noted that officers from the Denver Police Department arrested Petitioner for felony assault in 2023. (*Id*.)

The Government only cites a copy-paste, boilerplate provision attached to the top of the I-213 narrative. (Doc. 269 at 4.) The provision includes substantial similarities with language the Government has used in other I-213s. (*Compare id*., with Doc. 148 at 12, and Doc. 207 at 44.) Copy-paste, boilerplate language "by definition, fails to account for the unique facts of an arrest and strongly indicates that [immigration] officers are not conducting individualized probable cause assessments." *M-J-M-A v. Hernandez*, 25-cv-2011, 2026 WL 3301008, at *16–17 (D. Or. Nov. 2, 2026); *see Escobar Molina v. DHS*, 811 F. Supp. 3d 1, 66 (D.D.C. 2025) (boilerplate language "may give rise to an inference that an individualized assessment was not made").

The officer also must have the information regarding a person's community ties *before* the arrest for it to constitute a particularized inquiry that the person was likely to abscond or escape before a warrant could be issued. The record indicates that the arresting BPA arrested Petitioner after having conducted record checks. (Doc. 269 at 5.) The record fails to establish when the arresting BPA elicited the

information regarding Petitioner's alleged lack of local community ties. (*Id*. at 4-6.) Nothing in the record indicates how or when the arresting BPA obtained this information. (*Id*.) In fact, Petitioner alleges that the arresting officer failed to ask Petitioner about his family, property or overall ties to the community during the initial encounter. (Doc. 310-1 at ¶ 17.)

The documentation states that officers interviewed Petitioner when Petitioner arrived at the Malta Border Patrol Station (Doc. 269 at 6.) Petitioner once again informed officers of his immigration status. (*Id*.) The documentation fails to determine when the officer elicited the information regarding Petitioner's flight risk. The Court finds that based on the record it appears that officers conducted two separate interviews of Petitioner. (*Id*. 4-6.) The alleged information regarding flight risk could have been elicited at either time. (*Id*.) The record makes clear that the arresting BPA knew only of Petitioner's immigration status before the arrest and nothing else. (*Id*.)

The arresting officer must have authority under § 1357(a)(2) if the officer decides to take a person into immediate custody without first having obtained an arrest warrant. The Court cannot conclude whether the arresting BPA elicited the information regarding Petitioner's alleged flight risk before the BPA conducted the arrest. The Court further concludes that the flight risk assessment consists of boilerplate language and does not represent an individualized assessment. For these

reasons, the Court concludes that the arresting BPA officer failed to meet the requirements of § 1357(a)(2).

"This practice of after-the-fact arrest warrants can be called many things—illegal, improper, and unconstitutional, among them. But whatever label one wishes to apply, the practice is fundamentally at odds with and offensive to lawful, constitutional behavior in this country." *Parada Cruz*, 2026 WL 1027441, at *5. The Court determines that immediate release proves appropriate, available, and proper in this case to remedy the constitutional and statutory violations committed by the Government against Petitioner. The Court defers ruling on the matter of attorneys' fees and costs. Should Petitioner's counsel wish to pursue a claim for attorneys' fees and costs under the Equal Access to Justice Act (EAJA), they are instructed to file a separate motion on the issue in accordance with Local Rules.

Accordingly, **IT IS SO ORDERED.**

- Agustin Gutierrez Lopez's Petition (Doc. 253) is **GRANTED as to himself individually.**
- The Court orders the Government to release Petitioner from custody within 24 hours of this Order, under appropriate conditions of release, and to facilitate his transportation from the detention facility by notifying his counsel when and where he can be collected.

- **IT IS FURTHER ORDERED** that the Government must return Petitioner's personal property, including any personal identification and employment authorization documents, upon his release.
- **IT IS FURTHER ORDERED** that the Government is **PERMANENTLY ENJOINED** from detaining Petitioner pursuant to 8 U.S.C. § 1225(b)(2)(A).
- **IT IS FURTHER ORDERED** that the Government may not re-detain Petitioner pursuant to 8 U.S.C. § 1226(a) during the pendency of his current removal proceedings until after an immigration court hearing is held, with adequate notice, to determine whether detention is appropriate under 8 U.S.C. § 1226(a) and its implementing regulations. At this hearing, the Government must bear the burden of establishing that detention is appropriate by clear and convincing evidence.
- If Petitioner becomes subject to a final order of removal and Petitioner receives notice of such order, the Government may detain Petitioner for the sole and limited purpose of executing removal pursuant to 8 U.S.C. § 1231(a)(2)(A). In such an event, Respondents **SHALL** provide a bond hearing in the timeframe required by law.
- The Court orders the Government to certify compliance with this Order by filing on the docket.

- The Court retains jurisdiction to enforce its order and judgment. Petitioner may move to reopen this case to enforce the judgment without filing a separate case.

**DATED** this 10th day of November, 2026.

Brian Morris, Chief District Judge
United States District Court